## MILLER vs. THE STATE.

[INDICTMENT UNDER SECTION 3621 OF THE REVISED CODE, FOR KEEPING OR EXHIBITING GAMING TABLE.]

1. *Keno; when within purview of* § 3621 *of Revised Code.*—The game called "keno," when kept or exhibited by one person, that all who desire to do so, may gamble at it, is, within the purview and meaning of section 3621, Revised Code, to be regarded as a table for gaming.
2. *Same; who interested within the meaning of.*—A party who has a place in the room where the said game is exhibited and carried on, and sells to the persons who play at said game, the cards which are used in playing the same, is, within the meaning of said section 3621, interested or concerned in keeping or exhibiting a table for gaming.

APPEAL from the Criminal Court of Dallas.
Tried before Hon. GEO. H. CRAIG.

The opinion states the case.

REID & MAY, for appellant.—A gaming table is defined by Webster to be "a table appropriated to gaming," and by the witnesses examined in the lower court to be a game

Miller v. The State.

whose proprietor is the banker, and against whom and whose bank the bets are made.

The second section of the act of 1812, Aikin's Dig. 210, prohibited the keeping, &c., of any gaming table, commonly called A. B. C., or E. O., or Roulette, Rowley Powley, or Rouge and Noir, or any faro bank, or any other gaming table of the same or like kind, or of any other description, under any other denomination whatsoever, &c. The first section of the act of 1826, inhibited the granting of a license "to keep, or cause to be kept, any table, bank or other invention, by whatever name known or called, used for gaming, &c."—Aikin's Dig. 212.

The fourth section of the act of 1828 prohibited the "keeping or exhibiting any gaming table called A. B. C., or E. O., or Roulette, or Rowley Powley, or Rouge and Noir, or shall keep or exhibit any faro bank or other gaming table or bank of the like kind, or of any other description, under any other name," &c., &c.

Section 3249, Code of 1852, "any person who keeps or exhibits any gaming table," &c.

Section 3621, Revised Code, "any person who keeps, exhibits, or is interested or concerned in keeping or exhibiting, any table for gaming of whatsoever name, kind or description, not regularly licensed under the laws of this State, must," &c.

It is submitted that under the foregoing definitions, the game of "keno" can not be embraced in either of the statutes referred to.—Monarch's case, 6 Bush, (Ky.) 301; Jackson's case, 3 Denio, 101; Mann's case, 2 Oregon, 238; Harbaugh's case, 40 Ill. 294; Hall's case, 3 Broom, (N. J.) 158; Davis' case, 20 La. Ann. 354; Tate's case, 21 Tex. 202.

If defendant's offense is violative of any statute, it is of section 3616, Revised Code. The evidence satisfactorily shows that keno is not a gaming table, or a table for gaming, but is a lottery.

Keno was licensed, see subdivision 2, section 112, p. 331, acts 1868; also, subdivision 7, section 5, p. 268, acts 1867.

The framers of sections 3621 and 3622 certainly con-
cluded that "a game called keno," was not embraced in
section 3621.—(See Revised Code.) "*Inclusio unius est
exclusio alterius.*"

"The words of a penal statute shall be restrained for
the benefit of him against whom the penalty is inflicted;"
and where the intention of the legislature is doubtful the
inclination of the court shall always be against that con-
struction which imposes a burthen on the subject.—Broom's
L. M. 366.

Sir E. Coke observes: It is a true principle that refer-
ence should be made to a subsequent section, in order to
explain a previous clause of which the meaning is doubt-
ful.—Co. Litt. 381, A.

The lower court erred in its charge that "keno" was a
gaming table, and prohibited by section 3621.

The court could not *judicially know, since the statute
failed to name it,* that keno was a gaming table.

John W. A. Sanford, Attorney General, *contra.*—Any
person who keeps a table and sells cards used in the game
of keno, and at which the purchasers of the cards bet, is
guilty of a misdemeanor.—Revised Code, § 3621; *Whit-
worth v. The State,* 8 Post. 434–40; *State v. Red,* 7 Rich.
(S. C.) 8; *Crow v. The State,* 6 Texas, 334; *McGowan v.
The State,* 9 Yerg. 184.

To bet at keno is a misdemeanor.—Code, § 3622. What
reason can be given for the impunity of a person who has
the table, upon which the cards are placed, by the gam-
bler, after he has purchased them for the game, and who
sells the cards and receives a certain per cent. of the
stakes? Certainly, section 3621 is sufficiently broad in its
language to include such a table.

PECK, C. J.—The appellant, defendant below, was in-
dicted in the criminal court of Dallas county, for keeping
or exhibiting a gaming table for gaming, or being inter-
ested or concerned in the keeping or exhibition thereof.

The indictment was preferred under section 3621, R. C., which is as follows, to-wit: "Any person who keeps, ex-"hibits, or is interested or concerned in keeping or exhib-"iting, *any table for gaming*, of whatsoever name, kind or "description, not regularly licensed under the laws of this "State, must, on conviction, be fined not less than one "hundred, nor more than one thousand dollars, and may "also be imprisoned in the county jail, or sentenced to "hard labor for the county, for not more than twelve "months."

The defendant was tried on the plea of not guilty, convicted, and fined one hundred dollars. A bill of exceptions was taken by the defendant, in which all the evidence is set out, with the charges given by the court and excepted to by the defendant, and one charge asked by the defendant, which was refused to be given, and he excepted, &c.

Two witnesses, only, were examined, one by the State, and the other by the defendant, both of whom seem to have been adepts in the pernicious art of gambling.

The witness for the State stated that in March or April, in the year 1871, he was in a room in the rear of defendant's store, in east Selma, Dallas county; that while in said rear room, at said time, he engaged in a game called "*keno ;*" that he purchased from defendant a card for the purpose of playing said game, and paid to him the price of said card, which was twenty-five cents; that defendant did not take any further part in said game of keno, except to receive from said witness the money for said card. The wheel was turned by another person. That witness, with said card, played at said game of keno, in said room, at the time mentioned; that witness won and lost at said game. The game of keno is played in the following manner: There are ninety ivory balls or marbles, numbered from one to ninety, which are placed in an oblong wheel, which has a valve in the smaller part, and there are a number of cards, upon which is printed three lines of figures, each line having five numbers. These lines are combinations of numbers, from one to ninety. At the

beginning of the game, each of the players purchase one of these cards, at a price mutually agreed upon, and the money paid by the players, for these cards, constitute the pool to be played for, by the purchasers of cards. The balls are carefully examined, and placed in the wheel, by the person who runs the game, or the conductor of the game. The wheel is turned several times, and the valve, at its smaller part, opened, and a ball drops out, and its number announced by the person who runs or conducts the game. The player, who has the number announced, places a button on that number, on his card. The wheel is again turned, a second number is proclaimed, which is noted in the same manner, by a button as the first, and thus the numbers are continued to be drawn, until some person cries "keno," which means that the five numbers, upon one of his lines upon his card, have been drawn. The card of the player is then submitted to the conductor of the game, who examines it, and if found correct, the player receives the pool, less the per cent. taken by the person who runs or conducts the game, which is from ten to fifteen per cent. of the amount of the pool. This is the end of the game. The balls are returned to the wheel, the players purchase again a card, and the play goes on as before. The game, which he has described, is called "keno," and was the game he played as stated, when the defendant collected from him the price of the card. The defendant collected the money from other players, at the time witness played said game, and on several other occasions the defendant did the same, and he never saw any other person attending to said collections at said place.

The witness for the defendant testified that he was well acquainted with the game called "keno;" that the proper name of said game was "loto." In America it was known as "keno," and that he had heard the game called ninety-number lottery; that he had heard the witness for the State describe said game, and that his description of the same was correct. He said, at the game called keno, several persons could win in the same game, at the same time;

that in said game there was no fund staked by the conductor or manager of the game, against the players; that in said game, the fund that was played for, was the aggregate amount received in the game from players for cards, less the amount of commissions, deducted by the conductor or manager of the game, which was from ten to twenty per cent. of the amount so received.

This witness was not present at the time of the playing testified to by the witness for the State, and the remainder of his evidence consists mainly in describing the difference between the game called keno, and what he called a seventy-eight number lottery, and does not seem material to the understanding of this case, and I omit to state it. I will add, however, that he said the game of "keno" was not recognized or known as a table for gaming, by sporting men; that faro, roulette, rouge et noir, and other games, where the table, or game, or conductor of the same, has always a fund against which the player may hazard his money, are recognized and known generally as tables for gaming, or gaming tables.

After the evidence was closed, the defendant requested the court to give his charge to the jury in writing, which was done. I will not prolong this opinion by setting it out; it in substance amounts to this: That such a game as that described by the witnesses as "keno," came under, and was included in tables for gaming, prohibited by section 3621, R. C., under which the indictment was found; that in an indictment under said section, it was not necessary to allege or prove that any money was bet; that if, after considering all the evidence, they had a reasonable doubt of the defendant's guilt, he should be acquitted.

The solicitor asked the court to give three charges, varying in words, but equivalent to this: That if the defendant kept or exhibited, or was interested or concerned in keeping or exhibiting, the game called keno, described by the witnesses, they should find him guilty.

These charges were given and the defendant excepted.

The charge asked by the defendant, although very badly

Miller v. The State.

expressed, I understand to mean this: That if the jury believed, from the evidence, that the defendant only kept, or exhibited, a game called keno, or was interested or concerned in the keeping or exhibiting, a game called keno, he could not be found guilty. This charge the court refused, and defendant excepted.

1. There being no conflict in the evidence, it was the duty of the court to determine, and to instruct the jury, whether keno, the game played, as it was shown to be played in this case, within the purview and meaning of section 3621, R. C., was a table for gaming. In my opinion it was, and that the court committed no error in so instructing the jury.

Whenever a game is kept or exhibited by one person, who is said to *run the game*, who is the conductor or manager, and presides over the same, and it is carried on by means or instruments, as in this case, by a wheel, balls, cards, &c., that necessarily require the use of a table, or something in the place of it, and is kept or exhibited that third persons may gamble at it, whatever be its name or description, it is a table for gaming, or a gaming table, within the meaning of said section 3621.

The legislature wisely, and, as I think, intentionally, omitted to give any name or description to any table or tables for gaming, but have employed language comprehensive enough to embrace all, lest, if names and descriptions had been given, the cunning and devices of men might, thereby, evade the law, and escape its just penalties. We, therefore, decide that the game called keno, as it was kept and exhibited, in this instance, is to be regarded as a table for gaming.

2. Was the defendant interested or concerned in keeping or exhibiting said table for gaming? The jury, under what we hold to be proper charges, have found, and we think correctly, that he was.

As there was no error in the charges given, there was none in refusing the charge asked by the defendant.

Let the judgment be affirmed at appellant's cost.