No. 13,996.

STATE OF LOUISIANA VS. GEORGE AND JOHN L. HUNTER.

SYLLABUS.

1. What is meant by a "banking house," in the sense of the statute denouncing a penalty against whoever shall keep such a house at which money or any other representative of value shall be bet or hazarded, is not left in doubt by the language used.

2. There is no necessity for the judge, before whom a prosecution of this kind is being tried, to supply anything to eke out the meaning, purpose or intention of the law in order to make out the case.

APPEAL from the First Judicial District, Parish of Caddo— Land, J.

_Walter Guion_, Attorney General, and _John R. Land_, District Attorney, (_Lewis Guion_, of Counsel), for Plaintiff, Appellee.

_Wells & Wells_, for John L. Hunter, Defendant, Appellant.

The opinion of the court was delivered by

BLANCHARD, J. The indictment charged that the accused did "unlawfully keep a banking _game_, commonly called 'faro,' at which money and various things representing money, and commonly called 'chips' or 'checks,' were then and there bet and hazarded."

And, further, that they did unlawfully keep a banking _house_ at which money and various things representing money, and commonly called "chips" or "checks," were then and there bet and hazarded at a certain banking game, in said banking house, commonly called "faro," etc.

A motion to quash was made on the ground that Section 911 of R. S., under which they are charged with keeping a banking game or banking house, does not by its terms define what constitutes keeping a banking game or house. In this connection, it is contended that in Louisiana all crimes are statutory, and, hence, the definition of crimes, and the determination of what acts constitute crimes, are purely legislative functions, not to be delegated to or exercised by the judiciary; and that the failure of the statute aforesaid to define "keeping a banking game,

or banking house" leaves it to the court to supply the definition, which the court is without constitutional authority to do.

The motion to quash was overruled, the accused were tried—one of them, George Hunter, was acquitted, the other, John L. Hunter, was adjudged guilty of keeping a banking house and sentenced to pay a fine of $1000, or to be imprisoned in the parish jail for a term of six months.

He appeals.

It will be observed that John L. Hunter was convicted not of keeping *a banking game,* but of keeping *a banking house* at which, or in which, money was bet or hazarded. There were two counts in the indictment. He was convicted and sentenced under the second count.

So the question as to what constitutes "a banking game," or whether or not it is sufficiently defined and set forth in the statute, is not one of concern here, and need not now be considered.

It suffices to maintain this conviction if the statute is sufficiently precise and certain in the matter of denouncing as a criminal offense the keeping of a "banking house" at which money or other representative of value is bet or hazarded.

It is late for the issue here raised to be made. Laws denouncing banking games and banking houses at which money is hazarded have been on the statute books of the State since the year 1835, re-enacted from time to time, and none of them have been more specific in definition than the one under which the present indictment is framed.

Yet, repeatedly have appeals from convictions in such cases been before this court. It does not appear that the question of unconstitutionality on the grounds here advanced was even ever raised before.

In the case which came up in 1852 (City of New Orleans vs. Miller, 7 La. Ann. 651), Chief Justice Eustis, as the organ of the court, used this language:—

"That act (meaning the Act of 1835) evidently purports to prohibit and punish the keeping of gaming houses. The terms used in it of banking house, or banking game, present no difficulty whatever as to its meaning. The evil to be suppressed was the gaming house, with its capital always ready for play. Whether the capital, or stock, is owned or furnished by the house, or made up at the time by the players, the evil is the same and the offence is the same."

This declaration, that the terms "banking house," or "banking game," present no difficulty as to the meaning of the same, has been followed ever since, and we shall not depart from it now.

See State vs. Lenares, 12 La. Ann. 226; State vs. Markman, 15 La. Ann. 498.

Similar rulings have been made in other jurisdictions.

People vs. Carroll, 80 Cal. 153; State vs. Thomas, 50 Ind. 292; *In re.* Lee Tong, 18 Fed. Rep. 296; State vs. Gett Lee, 6 Oregon, 426; Miller vs. State, 48 Ala. 122; Foster vs. Territory, 1 Wash. 411; Lowry vs. State, 1 Mo. 722; Evans vs. State (Texas Crim. 1893), 22 S. W. Rep. 18; Stearns vs. State, 21 Texas, 694.

The statute itself contains enough of description and definition to meet and parry the criticism and objection herein made against it.

It does not merely say "whoever shall keep a banking game, or banking house, shall, on conviction, be fined, etc." It says "whoever shall keep a banking game, or banking house, *at which money, or anything representing money * * * shall be bet or hazarded,* shall, on conviction, etc." (Italics ours).

What, therefore, is a "banking house" in the sense of the statute, making the owner or keeper thereof subject to the penalty prescribed, is not left in doubt.

There is no necessity for the court to supply anything to eke out the meaning, purpose or intention of the law in order to make out a case.

Judgment affirmed.

Rehearing refused.