## JAMES SMITH V. THE STATE.

The billiards, the game of which is not forbidden by statute, is the ordinary game of billiards, commonly known as such and played in this country.

In construing statutes against gambling, the Courts now look to the substance of the game, and not to the name merely, and hold that where the game played is in substance the game prohibited, it is included in the statute, although it be played and known by a different name.

Appeal from Anderson.    Tried below before the Hon. John H. Reagan.

The charge was for betting money at, &c.

*Attorney General*, for appellee.

LIPSCOMB, J.   The appellant was indicted for playing at a game called Pin Pool.  He filed. an affidavit for continuance, which was overruled by the Court, and there was a trial, conviction and judgment, from which he appealed.  The only error assigned, is the overruling the motion for a continuance.

The affidavit as to the witness having been duly subpoenaed, seems to have been according to the terms of the statute.  He, however, proceeds in his affidavit to allege the facts which he expects to prove by the absent witness, and if such facts constitute no defence to the indictment, the motion was properly overruled.   The principles of the defence, disclosed in the appellant's affidavit, were well discussed by this Court in its Opinion in the case of Barker v. The State, (12 Tex. R. 273,) and according to the ruling in that case, the defence disclosed in this could not have been available.   It shows that pin pool would be regarded in Cuba and in Mexico as a game of billiards, but that it would not be so regarded in America.   It is to the latter alone we must look, and in construing the statute

licensing the game of billiards, we have nothing to do with the meaning of the term billiard table in other countries. If other different games could be played upon the table, under its name, it would not legalize them in our State. The statute of our State, in licensing billiard tables, has reference to the game then known and played called billiards, and will neither tolerate the change of the game, nor the introduction of other games to be played upon the table licensed. We look to the game, and not the name by which it may be called. There was a time when so much regard was paid to the name of a game, that when a game was prohibited, those professors of the science of gambling had only to change the name of the game to avoid the penalty, and the history of jurisprudence will show the following absurdities: When the game of Roulette was prohibited, those astute, scientific gentlemen changed the name to Rouge et Noir, from that to Roulette Poulette, and then to A B C, and to E O, and the last to O E. But such shallow devices can no longer be made available. Common sense has triumphed over such absurdities, and by the introduction of the word " device " into our statute, Courts will inquire, not into the name, but the game, to determine whether it is a prohibited game ; and if it is not the licensed game, the license will neither protect the owner of the table, nor the players, from the penalty of the law. The judgment is affirmed.

Judgment affirmed.