[No. 20540. In Bank. — August 5, 1889.]

## THE PEOPLE, RESPONDENT, *v.* P. J. CARROLL, APPELLANT.

CRIMINAL LAW — BANKING GAME — INFORMATION. — An information charging a defendant with *conducting* a banking game for money, when the statute requires in order to constitute an offense that it be "*played* for money," etc., charges no offense.

ID. — VALIDITY OF STATUTE. — Section 330 of the Penal Code, making it an offense to play a banking game for money, etc., is not invalid because the designation of the offense is too general and indefinite, and an information following the general language of the statute is sufficient.

ID. — DEFINITION OF BANKING GAME — QUESTION OF LAW — EXPERT EVIDENCE. — A banking game is a game conducted by one or more persons where there is a fund against which everybody has a right to bet, the owner of the bank being responsible for the payment of all the funds, taking all that is won, and paying out all that is lost. The definition of such game is a question of law, and expert evidence should not be allowed to determine the definition, but such evidence is harmless if the definition given is correct. But a witness who knows the game may tes-

tify in general terms what the game he witnessed was, or if not familiar with it, may describe it, and the court should instruct the jury as to what constitutes the game charged.

ID. — VENUE OF OFFENSE — REVIEW ON APPEAL. — When the transcript on appeal does not purport to contain all the evidence, and there is no specification of insufficiency of the evidence to prove the venue, the record does not present the question as to whether the venue of the offense charged was proven.

APPEAL from a judgment of the Superior Court of Fresno County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*W. A. Anderson*, for Appellant.

*Attorney-General Johnson*, for Respondent.

WORKS, J.— The information in this case charges as follows: "That said P. J. Carroll did, on the seventh day of October, 1887, at and in said county of Fresno, state of California, and prior to the filing of this information, willfully and unlawfully open, carry on, and conduct for money a certain banking game, played with a certain device, to wit, a wheel marked with numbers and colors, said game being then and there a banking game commonly known as the 'wheel of fortune,' contrary to the form, force, and effect of the statute in such cases made and provided, and against the peace and dignity of the state of California."

The section of the code under which the prosecution was instituted provides: "Every person who deals, plays, or carries on, opens or causes to be opened, or who conducts, either as owner or employee, whether for hire or not, any game of faro, monte, roulette, lansquenet, rouge-et-noire, rondo, tan, fan-tan, stud-horse poker, seven-and-a-half, twenty-one, or any banking or percentage game played with cards, dice, or any device, for money, checks, credit, or any other representative of value, is punishable by fine of not less than two hundred nor more than one thousand dollars, and shall be imprisoned in the

county jail until such fine and costs of prosecution are paid, such imprisonment not to exceed one year; and every person who plays or bets at or against any of said prohibited game or games is guilty of a misdemeanor." (Pen. Code, sec. 330.)

The information charges no offense under this section of the code, or any other. To constitute it an offense to conduct the game, it must be "*played* for money, checks, credit, or any other representative of value." The information does not charge that the game was *played* for money, but that defendant conducted it for money. It may be that those who were engaged in the game were playing for amusement, and paid the defendant a fixed sum, in no way dependent upon the result of the game, for conducting it. This would be within the allegations of the information, but it would not be a public offense or within the statute.

It is contended by the appellant that there could be no conviction for playing or conducting a banking game, if the information were sufficient in other respects, for the reason that the designation of the offense in the statute is too general and indefinite, and what constitutes a banking game is not generally known, and is not defined by the statute. The same might be said of the game of poker. Both games are no doubt known and understood by gamblers, and by many who are not gamblers. The game of poker may be known by a greater number of people, but neither, fortunately, are familiar to the public generally.

We can see no reason, therefore, why a statute making it an offense to play a banking game is not as valid and certain as a matter of legal certainty, as one making it a public offense to play poker. Both may be said to be commonly know and understood.

Section 666 of the Code of Criminal Procedure of Oregon, which provides that "all gambling devices, of whatever name or nature, adopted, devised, or designed

for the purpose of playing any game of chance for money, etc., are prohibited from being set up, used," etc., was held by the supreme court of that state not to include the "game of cards commonly called poker," because it was not specified by name as one of the devices prohibited by the statute. (*State* v. *Mann*, 2 Or. 238.) The appellant relies upon this case, but it is not in point.

Our code does specify a banking game by name. It may be that there are games known by different names which are included under the term "banking game," but this does not, in our judgment, render the statute so indefinite as to be inoperative. Such a construction would greatly facilitate the discovery of new games or old ones under assumed names, and embarrass the law-making power in a laudable effort to suppress a habit so pernicious and hurtful to society.

But the case of *State* v. *Mann, supra,* was in effect overruled by the same court in a later decision, in which a statute very similar to our own was held to be sufficiently definite. (*State* v. *Gitt Lee,* 6 Or. 426.)

In that case the court said: " We are of the opinion that it is not necessary in an indictment for a violation of this statute to state the name of the game, or the name of the device by which it is played. There is much force in the suggestion of the district attorney, that if it were essential either in a statute defining the offense of gambling, or in an indictment for the violation of such statute, to give the name of the game or of the device by which it is played, it would always be easy to evade the statute by changing the name of either the device or the game. We think that part of section 1 which prohibits 'any banking or any other game played with cards, dice, or any other device, whether the same be played for money, checks, credits, or any other representative of value,' is sufficiently definite, and renders unlawful all games not previously enumerated in that section, and which are played for

'money, checks, credits, or any other representative of value, with cards, dice, or other device.'" (See also, to the same effect, *In re Lee Tong*, 5 Crim. Law Mag. 67; *Miller* v. *State*, 48 Ala. 122; *Smith* v. *State*, 17 Tex. 191.)

We think the section of the code under consideration is sufficiently definite in this respect, and that it includes the offense attempted to be charged in this case.

It is claimed by the appellant that the venue was not proven. But we think he has not put himself in a position to present the question to this court. The transcript does not show in terms that it contains all of the evidence given at the trial. It is only required that it contain "so much of the evidence as is necessary to present the questions of law upon which the exceptions were taken," and the "judge is required to "strike out all other matter contained therein." (Pen. Code, sec. 1175.)

No question appears to have been made in the court below as to the sufficiency of the evidence in this respect, and no such specification of insufficiency of the evidence is made. Therefore the record does not present for our consideration the point attempted to be raised.

At the trial, evidence was allowed on the part of the prosecution to show what constituted a banking game, and it is urged that this was error, because the witness by whom it was proved was not shown to have been an expert, or to have personal knowledge of the game.

We find it unnecessary to determine whether the witness was competent to give an opinion on the subject or not. The question whether the game played was a banking game or not was one of law for the court, and we find that the definition given by the witness of a banking game was substantially correct, and such as the court should have given in its charge to the jury. He described the game as follows: —

"A banking game, as I understand it, is a game conducted by one or more persons where there is a fund

against which everybody has a right to bet, the bank
being responsible for the payment of all the funds, taking
all that is won, and paying out all that is lost. The fund
which is provided for that purpose is generally called the
bank, and the person who conducts it the banker."

We take this to be a sufficiently accurate definition of
a banking game, and as the court should have so charged
the jury as matter of law, the fact that the court per-
mitted the definition to be given by a witness, and in-
structed the jury that it was a question of fact for them
to determine, could have done the appellant no harm.

The court of appeals of Kentucky speaks of "banking
games, such as faro, roulette, and other games, where there
is a fund of money offered and ready to be staked on all
bets others may choose to make against the banker on
the game which he shall exhibit to entice bets." (*Ritte* v.
*Commonwealth*, 18 B. Mon. 40; Bishop on Statutory
Crimes, sec. 866.)

But if this were not so, this court has held in a late
case that the kind of game that was being played might
be proved in the mode adopted and followed in this case.
(*People* v. *Sam Lung*, 70 Cal. 515.)

We do not concur in the view, however, that one wit-
ness can describe the game, and another can be allowed
to testify that, from that description, the game was a
banking game, or any other. We think a person who
knows the game may testify in general terms what the
game he witnessed was. If not familiar with the game,
he may describe it, and the court should instruct the
jury as to what constitutes the game charged to have
been played or conducted, leaving the jury to determine
whether the game played was the one charged or not.
To leave the question open to be proved or disproved in
every case by experts would lead to great uncertainty in
the administration of justice.

For the insufficiency of the information, the judgment
and order are reversed, and the cause remanded.

SHARPSTEIN, J., and BEATTY, C. J., concurred.

PATERSON, J., concurred in the judgment.

THORNTON, J., concurring.—I concur in the judgment on the first point discussed in the opinion. I find no other error in the record.

McFARLAND, J., concurring.—I concur in the judgment on the first ground mentioned in the opinion of Mr. Justice Works; and I also concur in what is said in that opinion on the subject of venue. I do not concur, however, in the other parts of that opinion. I think that the testimony of Judge Terry was not only erroneously admitted, but was also important and material in the case. The court evidently did not know what a banking game was, as appears from its instructions to the jury; and the witness, although not an expert (except as to matters of law), was called to inform the court and jury on that subject. But that was really informing the court what the *law* was. And if the provision of the statute in question was so indefinite that the court could not tell the jury what facts would constitute a crime under it — that is, what the law of the case was— without the aid of a witness to tell *it,* then no conviction could be had under it. How would it look for a court to allow witnesses to testify what constitutes "larceny," or "burglary," or "embezzlement"? Of course, there are many well-known games which are designated in the statute by specific names; but that the general term "banking game" has no definite meaning strikingly appeared on the trial of this case, because,—1. The witnesses who were erroneously examined on the subject differed in their opinions; and 2. The court itself did not know what it meant. Can a man be held to answer a criminal charge upon such a vague accusation? And the evils suggested as likely to arise from this view can be easily remedied. If the legislature desires to make the playing of a bank-

ing game a crime, let it simply put into the statute what it means by that term, so that *the court* can tell the jury what constitutes the offense.