### WALTER FAUCETT v. THE STATE.

#### No. 2930. Decided March 9, 1904

**1.—Gaming—Exhibiting Banking Game.**

Where the principle on which the game was conducted was one against the many, no particular method of playing the game, such as throwing the dice alternately with others, would serve to change it from a banking game.

**2.—Evidence—Head to Head Game.**

Where appellant sat behind the crap table and took all bets of outsiders, he was keeping a banking game, and the fact that he threw the dice alternately with others did not change the feature of the game as a banking game, to that of a "head to head game."

**3.—Same—Private Residence.**

A banking or table game is not excluded under article 388, Penal Code, when the same is played with dice at a private residence, and an exhibitor of banking or table games is not thereunder relieved from indictment and punishment; said article only refers to an ordinary game of craps played with dice in its exemption.

**4.—Same.**

Question: If a table or banking game played with dice is exhibited illegally at a private residence, whether one who bets at such game is punishable.

Appeal from the County Court of Hill. Tried below before Hon. L. C. Hill.

Appeal from a conviction of exhibiting a banking game; penalty, a fine of $25.

Appellant occupied the second story of a two story brick building on the public square in the town of Hillsboro. Persons had access by means of a staircase ascending from the sidewalk which runs east and west in front of the place, which fronts south. The sidewalk is traveled by a great many people. The upstairs was about 80 or 100 feet long by 25 feet wide, and was cut up into three rooms; the front was the bed room

of appellant and wife, the middle room contained a regular crap table, two beds and some other house furniture, and the back room was used for kitchen and dining room; the staircase opened into the middle room. A great many persons would visit appellant at different times and play dice with him on the crap table and bet on the games.

Witness Jake Ephraim testified for the State, as follows: "I lost about $50 or $60. We would just go up there and shoot craps; Charley was with me; he shot and Walter (defendant) was there; he was behind the table. It was just the same kind of table as all crap tables; it was just straight; it was covered; I don't remember whether it had numbers on it or not. We shot with two dice. When we rolled them out, if I came out with the seven or eleven I won; if I came out with a couple of aces, or with two big sixes, I lose. If I throw nine and make that before I make seven I win; I call that my point; if I make the seven first, the man who runs the game wins. When I threw the dice, Charley and I would both bet on the throw and I would bet on his. We were both betting against Mr. Faucett and he was betting against both of us; I did not bet against Charley; I bet as high as $10 and I would throw until I won or lost. Walter (defendant) did not shoot against me; he faded all my bets; Charley did not fade any of my bets; I believe Charley did fade some of defendant's; I did not; I could if I had wanted to."

Other witnesses for the State substantially testified to a similar experience. Sometimes as many as seven or eight persons were seen there at a time engaged in shooting craps on said table, and the defendant was seen at that part of the table where they keep the dice; the money was frequently seen all around the table. "Persons would put down their money and as many get in as wanted to, and if they made a point, then the table had numbers and they would put money on the number, if they made the point before they shot seven, they made their point. The defendant stood at the place in the table where a piece was cut out, the table was between him and the players and the dice were on his side of the table." Defendant claimed that he used these apartments as his private residence; that his father used the room where the games were exhibited or played as a bed room, and that when people came up to see defendant they would sometimes engage in a game for the excitement there was in it. He did not deny that he played for profit, but took the ground that the law could not interfere with him in his private residence, etc.; that they were playing the ordinary game of craps and that no banking game or table was exhibited by him.

*J. T. Sluder, Walter Collins* and *Spell & Phillips,* for appellant.—In an ordinary game of craps, at which the parties who were in attendance and playing played against each other, and where no one of the players bet against all comers and players, it could not be and was not a banking game or banking table, for the keeping of which the owner would be liable to prosecution for keeping and exhibiting for the purpose of gam-

ing a table or bank. Shaw v. State, 35 Texas Crim. Rep., 394; Bell v. State, 32 Texas Crim. Rep., 187; Cummings v. State, 72 S. W. Rep., 395; Campbell v. State, 72 S. W. Rep., 396.

Betting at dice, or at any game played with dice or dominoes at a private residence, is not a violation of the law of this State; the fact that such games are played and bet at in a private residence is an absolute shield against a prosecution for gaming or exhibiting a gaming table or bank under the laws of this State. White's Ann. P. C., art. 388; Borders v. State, 24 Texas Crim. App., 333; Stewart v. State, 34 Texas Crim. Rep., 33.

*Howard Martin,* Assistant Attorney-General, *C. F. Greenwood,* County Attorney, and *B. Y. Cummings,* Assistant County Attorney, for the State.—1. The evidence in this record unmistakably establishes that the game in question was a banking game, and that the appellant played, dealt and exhibited the same.

2. It being a banking game, and the appellant its exhibitor, no protection is offered him because it occurred at a private residence.

3. If the statute ever contemplated the shielding of the exhibitor from prosecution where he operated in a private residence, it can not now be claimed, because the subsequent re-enactment of the exhibiting statute would repeal the beneficial clause of the prior statute.

HENDERSON, JUDGE.—Appellant was convicted of exhibiting a banking game, for the purpose of gaming, and his punishment assessed at a fine of $25 and ten days confinement in the county jail; hence this appeal.

Appellant contends that the proof shows that this was an ordinary game of craps played with dice, and was at a private residence, and was exempt from punishment under article 388, Penal Code, and he further contends that under said article, although it was a gaming table or bank, yet being played with dice and at a private residence, it is exempt. In answer to the first proposition, we would observe, that an examination of the evidence discloses that this was not an ordinary game of craps, or what appellant terms "a head and head game." Unquestionably according to the State's evidence it was a banking game; that is, a game of one against the many. Appellant sat behind the crap table, and took all bets of outsiders; and this is scarcely denied by appellant in his testimony. He admits a great number of persons came there and played at the game; he could not name them all. He shows that he sat behind the crap table, and that ordinarily he took all the bets of those who played on the outside. As to the particular game with Beck and Ephraim, on which it seems this prosecution is predicated, he bet against the two. He claims, however, that because he threw the dice alternately with the others, that this changed the feature of the game, as a banking game, to that of a "head to head game." We do not understand that any particu-

lar method of playing the game would serve to change it from a banking game to a simple game of craps with dice, where the principle on which the game was conducted was one against the many. This case comes within the principle laid down in Stearnes v. State, 21 Texas, 692, and is in its features precisely like the case of Bell v. State, 32 Texas Crim. Rep., 187, except, in that case, the parties did not alternate in throwing the dice—the exhibitor not throwing at all. But, as we have seen, that makes no difference where the principle of the game is the exhibitor against the outsiders, or one against the many. See Shaw v. State, 35 Texas Crim. Rep., 394.

As to the second proposition, we do not believe a banking or table game is excluded under article 388, Penal Code, when the same is played with dice at a private residence. In our opinion said article only refers to an ordinary game of craps played with dice; that is "a head and head game." It will be observed that said article 388 does not in terms relieve the exhibitor of banking or table games from indictment or punishment, but relieves any person who shall bet or wager at the enumerated games; among others, mentioning table or bank games. So that, even if the statute excludes one who bets at such a game, it does not excuse the exhibitor of a banking or table game; and under the evidence, as we have seen, appellant being an exhibitor, would not come within the exceptions of the statute. It is not necessary here for us to hold, if a table or banking game played with dice is exhibited illegally at a private residence, which we hold to be the case here, that one who bets at such game is not included; or rather that he is not amenable to the statute as coming within the exception. But we do hold that the exhibitor of a banking or table game is not included within any exception of said article 388. It is not necessary to discuss the authorities relied on by appellant, as they are not applicable.

There being no error in the record, the judgment is affirmed.

*Affirmed.*

[Motion for rehearing overruled without written opinion.—Reporter.]