## Ex parte WILLIAMS.

### Court of Appeal, Third District; July 31, 1906.

87 Pac. 565.

**Gaming.**—It is not a Crime, Under Penal Code, section 330, making it an offense to operate any banking or percentage game played with any device "for money, checks, credit or other representative of value," to set up and operate a slot machine on which games are played, unless played for money, checks, credits or other representative of value, and, if played for something not included in these words, it is not a crime.[1]

**Gaming.**—Penal Code, Section 330, Making It an Offense for anyone to operate any banking or percentage game played with any device for money, checks, credit, or other representative of value, adopted in 1872, prior to the existence of cigar slot machines, when considered in connection with section 331, prohibiting the use of any house for gambling, prohibited by section 330, and section 4, providing that the Penal Code is to be construed according to the fair import of its terms, does not make it an offense to operate a slot machine on which games are played for cigars.

Application by C. C. Williams for a writ of habeas corpus for his discharge from imprisonment on conviction of an alleged criminal offense. Petitioner discharged. Transferred to supreme court: See post, p. 309, 87 Pac. 568.

T. J. Butts, for petitioner; C. H. Pond, district attorney, for the people.

BUCKLES, J.—The petitioner was engaged in the saloon business, also selling cigars and tobacco in the city of Petaluma, and had therein a slot machine used by his customers in gambling for cigars. The complaint on which the petitioner was charged, arrested, tried, and convicted was as fol-

---

[1] Cited in the note in 121 Am. St. Rep. 693, on gambling games and devices.

lows: "On the 4th day of December, A. D. 1905 . . . . did willfully and unlawfully open, carry on, and conduct, at his saloon and place of business at 319 Main street, in the city of Petaluma, Sonoma county, state of California, a certain banking game, played by means of a slot machine, for money, checks, and other representatives of value, to wit, cigars and tobacco." While the complaint charges "for money, checks, etc," there is no pretension that either money or checks were played. It does appear from the return and record in the case that the crime charged and intended to be charged was using the slot machine for "other representatives of value," and that such representatives of value were cigars and tobacco. The petitioner was sentenced to pay a fine of $100, and to be imprisoned until such fine be paid, etc. The fine was not paid, and the petitioner was imprisoned. This answer to the return made by the sheriff contains the following, to wit: "That the slot machine mentioned in said complaint is operated by dropping a nickle or slug in the slot in the right-hand side of said machine, and then pressing a lever, and, if the proper combination of cards showed upon the cylinder, the party putting the nickle in the slot was entitled to a certain number of cigars, according to the combination of cards. If a royal flush was made to show upon the cylinder, the party playing the machine was entitled to forty cigars; for four aces, fifteen cigars; for four kings, fourteen cigars; for four queens, thirteen cigars, and under queens, ten cigars; full hand, eight cigars; a flush, six cigars; for three queens, three cigars, and under queens, two cigars; and two pairs, jacks up, two cigars; and one pair, aces, kings, or queens, one cigar; and any other combination would not win anything. That said machine was played for cigars, and nothing else, and that these facts were established and proved at the trial of this case." These facts are not controverted, and are set forth with above particularity for the sole purpose of showing that the entire charge made and the crime complained of was running the slot machine, not for money, checks, or credits, but for "other representatives of value." The slot machine is a device or thing where the person who plays it must, of necessity, play at a chance game, the owner or operator thereof paying when the person who has put in his nickle wins, and taking the nickle when there is a loss, and it is thus a banking game: People v. Carroll, 80 Cal. 153,

22 Pac. 129. It is not a crime, under section 330 of the Penal Code, to set up and run such a device as a slot machine described here, unless played "for money, checks, credits, or other representatives of value." If played for something not included in these, it is not a crime.

As it is here admitted that it was not played for either money, checks or credit, but for cigars, we are therefore called upon to determine what the legislature intended to include within the words, "or other representative of value." The respondent contends they can have but one meaning, and that anything of value, and therefore includes all kind of property having a value; while the petitioner claims they can refer only to some similar thing—to money, checks or credit. If the legislature was intending to prohibit all gambling with banking devices or by banking games played with cards, dice or any device, it seems to us there would have been no limitation as now to money, checks or credits, but the statement would have been for anything of value or that represents value. Gambling such as it is sought to prohibit by section 330 is carried on almost exclusively for money, or some obligation or promise which calls for money, and not other property. The very language of the section precludes any other idea. Then, if this be so, we must keep this in view in trying to determine to what the words "or other representative of value" were intended to apply. There is a general rule in construing statutes, either penal or otherwise, which forbids the adoption of any construction that will defeat the purpose for which the statute was obviously intended, and our code (Pen. Code, sec. 4) provides that all of the provisions of the Penal Code are to be construed according to the fair import of their terms, with a view to effect its object and to promote justice. These rules apply here. If we take into consideration, as the people contend we must, the fact that the chapter in which section 330 is found is headed "Gaming," we are furnished no aid, no light by which to arrive at the meaning of the words "or other representative of value," for there is no pretense that the section contains a prohibition against all kinds of gaming, but is limited to the kinds therein mentioned. Courts have no power to legislate, and if the legislature intended to simply prohibit banking and percentage games where played for money, checks, credits and other things similar to money, checks and

credits, this court has no power to add a further prohibition, and say that it will be a crime if such banking or percentage game is for other kinds of property, such as grain, fruit, horses, cattle, lumber, and all other things of whatever kind which may have a value. The rule seems to be well established in the interpretation of statutes and clauses like the one under consideration that where general words follow particular ones, the former are construed as applicable to persons or things of the same kind, class or nature. The rule has been further stated as follows: "Where a statute · or other document enumerates several classes of persons or things, and immediately following and classed with such enumeration the class embraces 'other' persons or things, the word 'other' will generally be read as 'other such like,' so that the persons or things therein comprised may be read as of the same kind, class, or nature, with and not of a quality superior to, or different from, those specifically enumerated": 21 Am. & Eng. Ency. of Law, 1012. In New York, where a statute exempted from taxation every building erected for the use of a college, incorporated academy, or other seminary of learning, it was held, as all those enumerated were corporations, that the general words "or other seminary" required that such institution should also be an incorporated one in order to have the benefit of the exemption; Chegaray v. Mayor etc. of New York, 13 N. Y. 220. In the Illinois Criminal Code the words "or other instrument of writing" is held to include only instruments of the same kind as those previously specified; that is, bills, notes, checks, etc., for the payment of money, and not to apply to the case of a contract under which it was wholly uncertain whether the money would ever become payable: Shirk v. People, 121 Ill. 61, 11 N. E. 888. So in Kentucky, where the statute read: "Section 1. Whoever with or without compensation, shall set up, carry on, or conduct, or shall aid and assist in setting up, carrying on, or conducting, a keno bank, faro bank, or other machine or contrivance used in betting whereby money or other things may be won or lost, etc.," the indictment charged that the defendant "unlawfully and feloniously set up, carry on, and conduct a machine and contrivance used in betting, to wit, a game of oontz played with dice and upon which money was won and lost." It was held that other machine or device must be of the same kind or nature with the keno

bank or faro bank, under the rule above stated. In that case the evidence showed that the game played was that commonly known as "craps" or "oontz," in which no machinery or implements are used save two ordinary dice: Commonwealth v. Kammerer (Ky.), 13 S. W. 108. Many other cases may be cited which uphold this rule, but we deem this sufficient. But the rule is not inflexible, for where it is plain from the whole act, document or subject matter that the real intent was different, then such manifest intent, and not the above rule, prevails. As in the definitions given in the code of degrees of murder: "All murder which is perpetrated by means of poison, or lying in wait, torture or by any other kind of willful, deliberate and premeditated killing . . . . is murder in the first degree." One who administers poison to another with intent to kill, and death results therefrom, is at once guilty of murder in the first degree, because the deliberation, premeditation, malice aforethought, and all have been established. So when the killing follows from lying in wait or from torture, but there are many other ways than these by which murder in the first degree may be committed: People v. Bealoba, 17 Cal. 389. The killing may be accomplished by pushing one from a high wall or into a deep well, or by any means which shows willful, deliberate and premeditated killing. Such statute needs no interpretation, for the intent of the lawmaker is seen at once. The betting on elections, on horseracing, and the gambling in stocks and in grain are kinds of gambling not included within section 330. The very language of the statute itself shows that the gambling which the legislature was attempting to prohibit was that sort of gambling usually carried on at a fixed place of business, where those seeking to play at games of chance could come, and where money is the thing usually wagered, or its representative, such as checks or anything which is a demand to be paid in money. It would hardly be considered reasonable that the legislature had in mind that the games and devices enumerated were played in the general markets where grain, animals and stocks are bought and sold. The intent of the legislature to legislate against games set up and carried on at a fixed place and in houses or rooms is shown by section 331 of the Penal Code, which attempts to prohibit the use of any house for the gambling prohibited in section 330. Neither is it plain that the legislature had in mind any kind of

property other than money, the thing most common for use in such games, and its representative such as checks and demands for the payment of money. Neither would it be a reasonable supposition that in 1872, when the act was passed, any banking game would be set up or carried on in gambling for anything but money and the instruments representing money, and therefore the legislature could not have had in mind the cigar slot machine, and could not have prohibited its use. The ingenuity of man, however, has devised a banking game in the cigar slot machine by which gambling may be carried on for property not included within "money, checks, credits or other representatives of value." There is nothing in section 330 which prohibits gambling for cigars. It follows that the petitioner must be discharged. The prisoner is discharged.

McLAUGHLIN, J.—I concur. Section 330 of the Penal Code provides that: "Every person who deals, plays, or carries on, opens, or causes to be opened, or who conducts, either as owner or employee, whether for hire or not, any game of faro, monte, roulette, lansquenet, rouge et noir, rondo, tan, fan-tan, stud horse poker, seven-and-a-half, twenty-one, hokey-pokey, or any banking or percentage game played with cards or dice or any device, for money, checks, credit, or other representative of value," is guilty of a misdemeanor. It is clear from the language of this section that it is a misdemeanor to conduct or carry on a slot machine or any other device played for money, checks, or credits, but we are here called upon to determine whether a person who conducts or carries on such a device played for cigars and tobacco is likewise guilty of an infraction of the law. Such acts as those enumerated in this and similar statutes are crimes only because they are prohibited by law, and unless the act charged against the petitioner is so prohibited, he is entitled to his discharge. If it is forbidden by law at all, it must be because cigars and tobacco are representatives of value, within the meaning of the section quoted. The words "or other representative of value" found in the section must be construed in connection with the preceding language in the same sentence, for the word "other" is a correlative and specifying word, meaning "different from that which has been specified; not the same; not this or those; different": Hyatt v. Allen, 54

Cal. 357. In other words, the word "other" will "generally be read as 'other such like,' so that persons or things therein comprised may be read as ejusdem generis with, and not of a quality superior to or different from, those specifically enumerated": 21 Am. & Eng. Ency. of Law, p. 1012; Stroud's Judicial Dictionary, p. 1359 et seq.; Lewis' Sutherland on Statutory Construction, secs. 423–430. A study of the innumerable cases supporting this doctrine or dealing with the proposition under discussion, found in the notes in works above cited, will show that in nearly every instance where this rule was not followed the word was used in a different connection or sense from that apparent in the statute before us. In a recent case the supreme court of this state said that there was little, if any, controversy as to the rule in its application to the penal statutes: Matter of La Societe Francaise, 123 Cal. 531, 56 Pac. 458. Applying this rule, and adopting the meaning of the word "other" when used in exactly the same connection and sense as in section 330 of the Penal Code, declared in Hyatt v. Allen, supra, we cannot escape the conclusion that conducting a slot machine played for cigars and tobacco is not within the prohibition of that section of the Penal Code.

But, aside from this, there is another rule commanding that words not plainly used in a technical sense shall be taken in their ordinary, general sense, and if this applied to the word "representative," as used in the section, it seems quite clear to my mind that cigars or tobacco cannot be considered as representative of value. The word "representative" as used in the statute certainly means "typifying"; "presenting by means of something"; "standing in the place of"; "that which represents anything." Cigars and tobacco are things of value; they have a value. This is beyond cavil. But in my opinion it could hardly be said that they represent their own inherent or market value. A certain coin or check or bill will represent the value of any quantity of cigars or tobacco, and these in turn will be inherently worth the price obtainable for them. But it would hardly be contended that because they have a certain value, measured by current mediums of exchange, they represent the value of the coin or currency paid for them, any more than they represent any other commodity which might be exchanged for them in the course of trade. Every commodity has a value measured according to

fixed standards, but the various commodities sold and bought in many markets and transactions do not represent the value of the gold, silver or currency paid for them. On the contrary, the medium of exchange established by law or recognized in business dealings represents their value. Thus we are led to the conclusion that the words "representative of value" do not mean that cigars and tobacco or any other commodity represents its own intrinsic or market value. A similar statute was before the supreme court of Montana in a recent case, and the decision of that court illustrates this distinction. There the statute read "for money, checks, credits or any representative of value, or for any property or thing whatever," and the court held that this language included cigars and tobacco, and in so holding said: "The enumeration includes every species of property of classes to which the particulars belong. 'Money' includes all money; 'checks' includes all kinds of articles embraced under that designation; 'credits' is a term of universal application to obligations due and to become due; and when we consider the expression 'any representative of value' there is nothing left of any of the classes of property enumerated; and unless the words 'any property or thing whatever' were designated to include merchandise such as cigars and similar articles, then it must be rejected as of no import whatever": State v. Woodman, 26 Mont. 348, 67 Pac. 1120. It will be noted that the statute there construed was much stronger than ours. It not only contained the comprehensive language "any property or thing whatever," but it was far more emphatic, in this, that it included "any representative of value," and hence the maxim ejusdem generis could not apply. And yet no person reading the decision can doubt that if the words "any property or thing whatever" had been omitted, the decision would have been the other way. And so it must be here, for had the legislature intended to place the ban of the law on slot machines played for cigars or any other class of merchandise, the natural, ordinary common sense, and in fact the only way to do so, would have been to use the phrase "anything of value," or some similar and equally comprehensive expression. Not having done so, we cannot extend the scope of the statute by giving it a construction at variance with rules of law and the accepted and established meaning of words employed. If the legislative department of the government desires to pro-

hibit this character of gaming, that result may easily be accomplished; but until they do so, every citizen is entitled to immunity from punishment for acts which are neither mala in se nor mala prohibita.

I concur: Chipman, P. J.