[Crim. No. 682. Second Appellate District, Division One.—October 13, 1919.]

## In the Matter of the Application of JOHN N. LOWRIE for a Writ of Habeas Corpus.

[1] CRIMINAL LAW—SUFFICIENCY OF COMPLAINT—LOTTERY—GAMING.— While the facts alleged in the complaint under review in this proceeding on *habeas corpus,* in which the petitioner was charged with conducting a lottery for the distribution of property by chance, raffle, and gift enterprise, did not constitute a lottery within the meaning of section 319 of the Penal Code, the acts with the commission of which the petitioner was charged did constitute a misdemeanor as defined by section 330 of said code, under chapter 10 thereof, entitled "Gaming."

[2] ID.—BANKING GAME DEFINED.—A banking game is a game conducted by one or more persons where there is a fund against which everybody has a right to bet, the bank being responsible for the payment of all the funds, taking all that is won, and paying out all that is lost.

[3] ID. — SALE OF CHIPS — BETTING — THROWING OF DICE — BANKING GAME.—A person engaged in conducting a game wherein, to anyone wishing to play the same, he sells ten white chips for a dollar, one or all of which chips each of the purchasers might lay upon the table as a bet and in each case the person conducting the game covering the bet by a like number of chips, he to then throw the dice from the box, followed by the others doing likewise, the result of which determines who loses or wins, the bets being paid accordingly, all chips won by the person conducting the game going into a common fund kept by him, called the bank, and out of which he pays all losses, is conducting a banking game.

[4] ID.—PLAYING FOR CHIPS REDEEMABLE IN MERCHANDISE—VIOLATION OF STATUTE.—A person conducting a banking game played for chips, each of which has a definite monetary value and is redeemable at such value by the person conducting the game, in merchandise selected by the winner of the chips, is guilty of an offense under section 330 of the Penal Code.

[5] ID.—STATUTE NOT REPEALED BY IMPLICATION.—There is nothing in section 330a of the Penal Code upon which to claim a repeal by implication of the provisions of section 330 of said code.

PROCEEDING on Habeas Corpus to test the sufficiency of a complaint to charge an offense. Writ discharged and petitioner remanded to custody.

1. What constitutes a lottery, note, 1 Ann. Cas. 91.

The facts are stated in the opinion of the court.

John S. Cooper for Petitioner.

Thomas Lee Woolwine, District Attorney, and Bonner Richardson, Deputy District Attorney, for Respondent.

SHAW, J.—*Habeas corpus.* At the time of the issuance of the writ herein petitioner was imprisoned under a complaint charging him with conducting a lottery or scheme for the distribution by chance of property to the complainant, and the public, for which chances valuable considerations were paid, and which alleged unlawful scheme was conducted "in the manner following and no other, to wit: In that the said defendant, John N. Lowrie, did have five dice and a cup, which said dice were dice having six bases or faces and no more, and which dice were in the form of cubes with the faces thereof numbered consecutively from one to six, and were used in the following manner in the conducting of said lottery: That complainant James F. Smith and the public were invited to engage in said lottery, and to play the same; that complainant paid to defendant the sum of One Dollar and received therefor from said defendant ten white chips; that complainant laid one of the chips upon the board and the other players engaged therein did likewise; that the defendant then threw the dice and when the dice were exposed, said defendant counted the number of pairs and there were one pair of fours (4s); the defendant then handed the cup and dice to complainant, who thereupon threw the dice and there was exposed upon the upper side one pair of sixes (6s); that thereupon defendant handed to complainant a white chip of the same kind that he had purchased. Then the cup was handed to the other players, who did throw the dice, and who won and lost, and when each player lost, the defendant took a white chip, and when each player won the defendant gave the player a white chip. In some instances a player would place upon the board more than one chip, and when he won the defendant would give to him an equal number of chips, and when he lost the defendant would take all the chips deposited by the player upon the board. When the player had finished playing the game he was invited by the defendant to surrender his chips

and receive therefor merchandise only to the value of his chips, each chip being computed at ten cents and merchandise distributed to each winner by defendant; and if the player had no chips he received nothing. Which said scheme for the distribution of property by chance, raffle and gift enterprise is designated and known as Razzle Dazzle.''

[1] The greater part of the argument of counsel is devoted to the question as to whether the complaint charges defendant with conducting a lottery as defined by section 319 of the Penal Code, in the chapter designated as chapter 9 and entitled ''Lotteries,'' as claimed by respondent and with which contention petitioner takes issue. Under our view of the case it is unnecessary to discuss the points made for and against this proposition by the respective parties or to review the many authorities cited by each in support of his contention. Suffice it to say that, in our opinion, the facts alleged, and which we have fully set out, do not constitute a lottery within the meaning of the statute. Nevertheless, we are of the opinion that the acts with the commission of which defendant is charged constitute a misdemeanor as defined by section 330 of the Penal Code, under chapter 10 thereof, entitled ''Gaming.'' This section provides that ''every person who deals, plays, or carries on . . . or who conducts . . . any game of faro . . . or any banking . . . game played with cards, dice, or any device, for money, checks, credits, or other representative of value, . . . is guilty of a misdemeanor, . . .'' [2] A banking game, as defined in *People* v. *Carroll,* 80 Cal. 153, [22 Pac. 129], ''is a game conducted by one or more persons where there is a fund against which everybody has a right to bet, the bank being responsible for the payment of all the funds, taking all that is won, and paying out all that is lost. The fund which is provided for that purpose is generally called the bank, and the person who conducts it the banker.'' And in *Shaw* v. *State,* 35 Tex. Cr. Rep. 394, [33 S. W. 1078], it is said, in effect, that where a person threw the dice, took the bets, stood behind the table, and was one against many, he was the dealer of the game, and hence the game was a banking game. [3] From the allegations of the complaint it clearly appears that defendant was engaged in conducting a game wherein, to anyone wishing to play the same, he sold ten white chips for a dollar, one or all of which chips

each of the purchasers thereof might lay upon the table as a bet and in each case the defendant covered the bet by a like number of chips. He then threw the dice from the box, followed by the others doing likewise, the result of which determined who lost or won, and the bets were paid accordingly. All chips won by defendant went into a common fund kept by him, called the bank, and out of which he paid all losses. That it was a banking game we entertain no doubt. (*Ex parte Williams*, 7 Cal. Unrep. 301, [87 Pac. 565].)

[4] Conceding the character of the game as stated, petitioner properly claims that under section 330 of the Penal Code, he could not be guilty of an offense unless it was "played for money, checks, credits, or other representative of value," none of which terms, he insists, can be said to include the white chips constituting the stakes played for in the instant case; in support of which contention he cites the Williams case, *supra*. In that case a slot machine was used by the defendant's customers in gambling for cigars and tobacco, and while the court held that it constituted a banking game, it was also held that cigars were not moneys, checks, nor credits, nor were they included within the term "other representative of value"; and hence the acts with which Williams was charged did not constitute an offense within the meaning of the statute. We may concede the correctness of the court's conclusion in that case. The game which defendant is charged with conducting was not played for cigars or other merchandise, but for chips, each of which under the agreement and scheme represented the value of ten cents and was redeemable at such value by the defendant as banker, in merchandise selected by the winner of the chips, and hence they were representative of the value of the merchandise so received in exchange therefor. Had the chips been redeemable in money of the realm, it seems, under the decisions in the Williams case and *People* v. *Carroll, supra,* there would be no question as to the acts alleged constituting an offense. But the merchandise given in exchange for the chips must be deemed of value and the value of the goods which, in accordance with the scheme, were given in exchange for the chips won was represented by the chips, possessing no intrinsic value whatever. Hence, conceding the correctness of the Williams case, wherein it was held that

the cigars constituting the stakes were not representative of value, it is distinguishable from the facts in the present case in that the chips played for were, under the scheme and agreement, intended to and did represent ten cents each in value, to be paid for and redeemed in merchandise.

[5] There is nothing in section 330a of the Penal Code upon which to claim a repeal by implication of the provisions of section 330.

The writ is discharged and petitioner remanded to the custody of the sheriff of Los Angeles County.

Conrey, P. J., and James, J., concurred.