122 Cal.App.2d Supp. 966 (1953)
THE PEOPLE, Respondent,
v.
M. F. AMBROSE et al., Appellants.
California Court of Appeals. 
December 31, 1953.
 James M. Thuesen for Appellants.
 C. M. Ozias, Denver C. Peckinpah and Charles F. Hamlin for Respondent.
 CONLEY, J.
 The defendants appeal from a judgment convicting them of the violation of an ordinance of the city of Fresno, which forbids the conducting of gambling games. Two points were raised on the appeal; first, it is contended that the evidence does not justfy the verdict of guilty; and, secondly, it is urged that one of the instructions was erroneus.
 [1] The first point is not well taken, for the evidence amply supports the verdict. The record shows that the defendants operated premises at 1021 Broadway in the city of Fresno; that on June 24, 1953, at one of the card tables in their establishment, supervised by a dealer employed by them, a game of panguingui was played by seven persons who bought chips from the dealer, and who used the chips in the game; [122 Cal.App.2d Supp. 968] whenever a player quit the game he cashed in his remaining chips and was paid in money by the dealer; whenever a new player joined the game he paid the dealer in money for his stack of chips. There was only one witness, a police officer of the city of Fresno, who, in plain clothes, observed the game in the defendants' cardroom, and testified in detail as to what he saw. None of the defendants took the stand, and they called no witnesses.
 Panguingui is defined by Webster's New International Dictionary, second edition, as "A Tagalog gambling game." The uncontradicted evidence was that the game played was panguingui; the account of the game contained in the record checks with the description of panguingui as set forth in works of reference. (See Culbertson's Hoyle, "The New Encyclopedia of Games with Official Rules," p. 47; Scarne on Cards, p. 150.) With the added proof that the game was played for chips convertible into money through the dealer, the guilt of the defendants was established beyond a reasonable doubt.
 The appellants argue that the following instruction was prejudicially erroneous: "You are instructed that if you are convinced beyond a reasonable doubt that the defendants conducted or allowed to be conducted, a game played with cards for money, either directly or indirectly, or for checks, credit, chips or any other article exchangeable for or redeemable in money, it is your duty to convict the defendants."
 The basis of the attack on this instruction is that the court did not limit the charge by specifically excluding banking or percentage games referred to in section 330 of the Penal Code. That section of the Penal Code prohibits the playing of a number of specified card and dice games, and also all other "banking or percentage" games:
 "Every person who deals, plays, or carries on, opens, or causes to be opened, or who conducts, either as owner or employee, whether for hire or not, any game of faro, monte, roulette, lansquenet, rouge-et-noir, rondo, tan, fan-tan, studhorse poker, seven-and-a-half, twenty-one, hokey-pokey, or any banking or percentage game played with cards, dice, or any device, for money, checks, credit, or other representative of value, and every person who plays or bets at or against any of said prohibited games, is guilty of a misdemeanor, and shall be punished by a fine not less than one hundred dollars nor not more than five hundred dollars, or by imprisonment in the county jail not exceeding six months, or by both such fine and imprisonment." (Emphasis added.) [122 Cal.App.2d Supp. 969]
 The city of Fresno attempted to cover the field of gaming, not already thus preempted by the State of California, by enacting an ordinance forbidding gambling, through the playing for money, with cards, dice or other devices, of all other games besides those specifically prohibited by the state enactment. (In re Portnoy, 21 Cal.2d 237, 239 [131 P.2d 1].)
 Section 232 of Ordinance No. 1076 of the city of Fresno, as amended, reads as follows: "It is hereby declared to be unlawful for any person within the City of Fresno to rent, open up, carry on, or conduct, or have charge or control of, any room, apartment, or place in the City of Fresno either as an owner or employee, whether for hire or not, wherein or whereat any game played with cards, dice, or any other instrument, thing, device, or machine, which game is not prohibited by any law of the State of California, is played, dealt, conducted, carried on, permitted to be played or dealt, for money, either directly or indirectly or for checks, credit, chips, or any other article exchangeable for or redeemable in money."
 [2a] Appellants contend that the instruction was entirely too broad in that by its terms it might be thought by a jury to cover any banking or percentage game forbidden by the mandate of section 330 of the Penal Code. This contention is accompanied by the argument that the game described by the witness might have been a banking or percentage game, hence violative of section 330 of the Penal Code and excluded from coverage by the Fresno City ordinance.
 But the answer to this contention seems clear and conclusive: under the laws of this state, it is the duty of the trial judge to determine whether a game involved in a prosecution for gambling is, according to its description, a banking or percentage game; and, inasmuch as the game of panguingui, as played in the establishment of the defendants, was not a banking or percentage game and could not possibly have been found to be such, the instruction was not erroneous in failing to exclude by its terms any banking or percentage game.
 [3] In People v. Carroll, 80 Cal. 153, 157 [22 P. 129], it is said: "The question whether the game played was a banking game or not was one of law for the court. ..."
 [2b] In this case the sole witness testified that the game played was panguingui, and he further described the game in considerable detail. Under the authority of the Carroll case, which has never been overruled in this state, it was the duty of the court to decide as a matter of law whether the game described was a banking or percentage game; the court presumably [122 Cal.App.2d Supp. 970] carried out its duty in this respect and determined that the game was not a banking game, leaving it to the jury to find whether the game was, in fact, played, and whether it was played for money.
 [4] A banking game is one "where there is a fund against which everybody has the right to bet, the bank taking all that is lost by the betters and paying out all that is won by them, or all save a percentage which it keeps." (38 C.J.S., p. 38; People v. Carroll, supra; Ex Parte Lowrie, 43 Cal.App. 564 [185 P. 421]; Ex parte Williams, 7 Cal.Unrep. 301 [87 P. 565].)
 [5] In a banking game the banker or exhibitor pays all the winnings and suffers all the losses; he is the one against the many, which is the supreme test of a banking game. (Bell v. State, 32 Tex.Crim.Rep. 187 [22 S.W. 687]; Faucett v. State, 46 Tex.Crim.Rep. 113 [79 S.W. 548].)
 In State v. Rabb, 130 La. 370 [57 So. 1008, 1010], it is said: "Where the players bet against each other and settle with each other, the game is not a banking game. ..." (See, also, Cummings v. State, (Tex.Crim.App.) 72 S.W. 395; State v. Bradley, 51 R.I. 4 [149 A. 863].)
 [6] The mere payment of rental by the players for the use of the table, cards and chips, or the acting by the proprietor or dealer as stakeholder, does not convert a game into a forbidden banking game. (State v. Bradley, supra; Tully v. State, 88 Ark. 411 [114 S.W. 920]; 27 C.J., p. 970.)
 Panguingui, as played in defendants' cardroom, was not a banking or percentage game, but one in which each of the players played against all of the others. The fact that the "pot" was manually controlled by the dealer does not affect this conclusion, for the establishment had no interest in the outcome of the game; the defendants did not set up a bank against which all of the participants played, nor did they take a fixed percentage of the winnings. If any player won, such winning was offset by losses on the part of some of the numerous other players. The collection by defendants' employee of rental for the table and equipment did not change the game to a banking or percentage game. [2c] The trial court was right in determining that the game played was not a banking or percentage game and in instructing the jury as it did.
 It is, therefore, ordered that the judgment of conviction as to each defendant be, and it hereby is, affirmed.
 Shepard, P. J., and De Wolf, J., concurred.