TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

---

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 93-1005 |
| of | : | |
| | : | May 13, 1994 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

---

THE HONORABLE MICHAEL D. BRADBURY, DISTRICT ATTORNEY, Ventura County, has requested an opinion on the following question:

May the card game 21 be played in California under conditions where each player is charged a fixed fee for a designated amount of chips and the playing time is limited to a specified number of hours?

CONCLUSION

The card game 21 may not be played in California under conditions where each player is charged a fixed fee for a designated amount of chips and the playing time is limited to a specified number of hours.

ANALYSIS

This opinion concerns the game called "Twenty One For Fun." The operator of the game provides a dealer, a blackjack table, and equipment (decks of cards, a "shoe" for holding the cards, and the chips) for the game. Each table accommodates seven players. For a $10 fee, a player may play 21 (also known as "blackjack"), receiving chips totaling $2,000 in "value." The chips come in $25, $100, and $500 denominations. A player may continue playing so long as he or she has chips, not exceeding four hours of playing time. The chips are not convertible into money or any type of tangible property. May this game be played in California? We conclude that it may not.

Section 19 of article IV of the Constitution states:

"(a) The Legislature has no power to authorize lotteries and shall prohibit the sale of lottery tickets in the State.

"(b)  The Legislature may provide for the regulation of horse races and horse race meetings and wagering on the results.

"(c)   Notwithstanding subdivision (a), the Legislature by statute may authorize cities and counties to provide for bingo games, but only for charitable purposes.

"(d)  Notwithstanding subdivision (a), there is authorized the establishment of a California State Lottery.

"(e)  The Legislature has no power to authorize, and shall prohibit casinos of the type currently operating in Nevada and New Jersey."

The Legislature has specifically implemented the constitutional prohibition against lotteries (Pen. Code, §§ 319-329),[1] it has authorized bingo games for charitable purposes (§ 326.5), and related to the prohibition against "Nevada and New Jersey type" casinos, it has expressly banned various forms of gambling (§§ 330-336).

The playing of the card game 21 is prohibited under the conditions and terms specified in section 330.  (See *In re Clark* (1921) 54 Cal.App. 507, 508; *United States* v. *Graham* (9th Cir. 1976) 534 F.2d 1357, 1358-1359.)  Section  330 states:

"Every person who deals, plays, or carries on, opens, or causes to be opened, or who conducts, either as owner or employee, whether for hire or not, any game of faro, monte, roulette, lansquenet, rouge et noire, rondo, tan, fan-tan, seven-and-a-half, twenty-one, hokey-pokey, or any banking or percentage game played with cards, dice, or any device, for money, checks, credit, or other representative of value, and every person who plays or bets at or against any of those prohibited games, is guilty of a misdemeanor, and shall be punishable by a fine not less than one hundred dollars ($100) nor more than one thousand dollars ($1,000), or by imprisonment in the county jail not exceeding six months, or by both the fine and imprisonment."

The key language of section 330 requiring our analysis is the phrase "for money, checks, credit, or other representative of value."  This element must be proved to establish a violation of section 330.  (*People* v. *Carroll* (1889) 80 Cal. 153, 155; *Pittman* v. *Superior Court* (1967) 256 Cal.App.2d 795, 797; *In re Clark, supra*, 54 Cal.App. at 509; *In re Lowrie* (1919) 43 Cal.App. 564, 567.)  If the players are playing for their own "amusement" without any stakes to be won or lost, section 330 is not violated.  (See *People* v. *Ah Own* (1890) 85 Cal. 580, 581-583; *People* v. *Carroll, supra*, 80 Cal. at 155; *People* v. *Sam Lung* (1886) 70 Cal. 515, 516-517; *Pittman* v. *Superior Court, supra,* 256 Cal.App.2d at 796-797; *In re Clark, supra,* 54 Cal.App. at 509; *In re Lowrie, supra,* 43 Cal.App. at 567; 9 Ops.Cal.Atty.Gen. 108, 109 (1947).)

Do the chips used by the players in the game "Twenty One For Fun"  constitute "other representative of value"?  If the chips were convertible into money, they would clearly meet the requisite test.  (*People* v. *Carroll, supra,* 80 Cal. at 155.)  The same would be true if the chips were convertible into merchandise.  In *In re Lowrie, supra,* 43 Cal.App. 564, the court concluded with respect to chips that were redeemable in merchandise:

---

[1]All references hereafter to the Penal Code are by section number only.

". . . they were representative of the value of the merchandise so received in exchange therefor.  Had the chips been redeemable in money of the realm, . . . there would be no question as to the acts alleged constituting an offense.  But the merchandise given in exchange for the chips must be deemed of value and the value of the goods which, in accordance with the scheme, were given in exchange for the chips won was represented by the chips . . . ." (*Id.*, at p. 567.)

In *In re Clark, supra*, 54 Cal.App. 507, the court stated:  "The purpose of the law is to prohibit games of the kind mentioned and described at which money or property or the representative thereof, is lost or won." (*Id.*, at p. 509.)

Here the chips cannot be converted into money or any type of tangible property.  However, they do allow each player to complete the four hours of possible playing time if they are won.  On the other hand, if they are lost, the playing time is terminated.  Of course, at the end of the four hours, the chips have no value.  In these circumstances, do the chips constitute "representative of value"?

In the somewhat related context of obtaining additional playing time by scoring a requisite number of points on a pinball machine, the courts have characterized the additional games as "property" for purposes of the lottery statute, section 319.  In *People* v. *Settles* (1938) 29 Cal.App.2d Supp. 781, 786-787, the court concluded:

". . . The duty of the operators of this game to permit the winner to play further games free is an obligation arising from contract, and the right of the player in the matter is personal property (Civ. Code, sec. 663), and a thing in action.  It is, therefore, property within the meaning of section 319, Penal Code.  [Citations.]"

In *Gayer* v. *Whelan* (1943) 59 Cal.App.2d 255, 257, the court stated:

"It is conceded that where the machine returns tokens . . . that may be . . . used to replay the device, as a reward for the player making a high score . . . the machine is a gambling device coming within the provisions of the majority of the statutes. . . ."[2]

On the other hand, in *People* v. *Carroll, supra,* 80 Cal. 153, interpreting section 330, the court declared:

"The information charges no offense under this section of the code, or any other.  To constitute it an offense to conduct the game, it must be `*played* for money, checks, credit, or any other representative of value.' The information does not charge that the game was *played* for money, but that defendant conducted it for money.  It may be that those who were engaged in the game were playing for amusement, and paid the defendant a fixed sum, in no way dependent upon the result of the game, for conducting it.  This would be within the allegations of the information, but it would not be a public offense or within the statute." (*Id.*, at p. 155.)

Or, as stated in *In re Clark*, 54 Cal.App. 507, *supra*:

---

[2]Since 1950 California has expressly prohibited pinball and other slot machines that reward a high score with an additional game.  (§§ 330b, 330.1; *Merandette* v. *City and County of San Francisco* (1979) 88 Cal.App.3d 105, 113-114.)

". . . It cannot be assumed that it is impossible that any of the games specifically mentioned may not be played for amusement only and without the incident of money or property being wagered or bet thereat." (*Id*., at p. 509.)

We believe that the holdings of the above cited cases may be reconciled by focusing on what the players received in exchange for their fees in each of the games. In the situation presented here, the players will receive at most 80 chips, allowing them to participate in the games while the chips remain. The chips are initially worth $10 and represent the value of continued playing time. Only at the end of the four hours do they lose their value of continued playing time. Since the playing time has value, the chips won or lost in each game would represent that value; it is of monetary benefit to win each game. We believe that this situation may be likened to that in *Settles* and *Whelan* described above.

If, instead, the players here were to receive four hours of playing time for their $10 fees, no monetary benefit would result by winning each game. The players would continue playing regardless of winning or losing. The chips would not represent anything of value during the four hour period. Although it cannot be definitely determined, it appears that this type of situation may be likened to that considered in *Carroll* and *Clark* described above.

Accordingly, we believe that the precise circumstances here, taken as a whole, demonstrate that "Twenty One For Fun" is not played for amusement only, but rather for chips that are representative of the value of continued playing time within the meaning of section 330. In answer to the question presented, therefore, we conclude that the card game 21 may not be played in California under conditions where each player is charged a fixed fee for a designated amount of chips and the playing time is limited to a specified number of hours.

* * * * *