### JOHN BELL v. THE STATE.
*No. 63.  Decided May 27.*

**1. Gaming Table—"Craps."**—Where, on a trial for exhibiting a gaming table, the evidence showed that the game played was "craps," that it was played upon a table of a certain form and with printed numbers on it to be used in the game, which table was exhibited to attract bettors; that it had an exhibitor who presided at and kept his money upon it; that all the parties to the game threw the dice, except the exhibitor; that all bet against him; that he paid the winnings of the bettors, and took all the losses: *Held*, that such table was a gaming table, within the purview of articles 358 and 359 of the Penal Code.

**2. Same — Test as to what is a Gaming Table.** — The test as to whether a game played on a table was exhibiting a gaming table or bank is, "was

it a game of the one against the many?" Following Stearns v. The State, 21 Texas, 698.

3. **Same—Case Distinguished.**—See distinction drawn between the facts. in this case and the facts in Chappel v. The State, 27 Texas Criminal Appeals, 310.

APPEAL from the County Court of Donley. Tried below before Hon. B. H. WHITE, County Judge.

Appellant was indicted for unlawfully keeping and exhibiting for the purpose of gaming a gaming table and bank, and at his trial, the cause having been submitted to the court without a jury, he was convicted, and his punishment assessed at a fine of $25 and ten days imprisonment in the county jail.

The facts proved on the trial were:

That the defendant, John Bell, in Donley County, Texas, on the 1st day of August, 1892, did sit by the side of a certain table, and have on that table a sum of money, to-wit, about $15; also two dice cubes, with six sides each, and having dots on those six sides as follows, one, two, three, four, five, and six dots on one side respectively of each dice, the same being ordinary playing dice. The table was an ordinary table, but had around its edges strips which prevented the dice rolling off when thrown on the table; also had a cloth on it, and on that cloth were numbers in a row as follows, 4, 5, 6, 7, 8, 9, 10.

While the defendant was at the table a man on the outside approached,. going to the table, picked up the dice, laid some money down on the said table, when the defendant threw out a blind or block on about the number 7. The man threw the dice on the table. The game was played as follows: If the man threw *seven* or *eleven* he won, and the defendant paid him the amount of the bet. If he made two or three he lost, and defendant would take his money. If he made any other number than *seven* or *eleven* it was called his "point," and he continued to throw until he threw his "point" again or *seven*. If he made his point first, he won;. if he made seven first, he lost.

This man played for sometime. When the defendant won bets, he put what he won on the table with money he had there. If he lost, he paid the bets with money taken from the money on the table. The man throwing the dice would have his money in his hands and laying on the table; could put it down on the table. The defendant had a "chip" or block which he used to mark "points" the thrower would make. If the man on the outside would throw a "point" on the first throw, the defendant would put his "chip" blind on the corresponding number on the table. This was to prevent the defendant and players from forgetting the "point," thereby causing misunderstandings. The game is called "craps." When one is playing at it they sometimes call it playing, but it is generally called "shooting craps."

The defendant sat by that table, and would take all bets with any one who came up and wanted to bet, paying lost bets from said money on said table, and putting bets won with said money. The man on the outside did all the throwing of the dice. The game is properly "craps." It is known as "old nigger craps," and has been in existence in the South for nearly fifty years. It is played by one party putting down where they are to throw the dice the amount of money he wishes to bet, when any one who wishes can bet against him by putting down a like amount, which in the game parlance is "fading the bet."

The party "fading," when he puts down the amount bet by the thrower and says he "*fades*" the thrower, he bets against 7 and 11 on the first throw, and against the thrower's "point" after that until one of them won or lost. In the game played aforesaid, defendant always, or nearly always, did the "fading." He could throw the dice and let some one else fade him, if he chose so to do, and any one would "fade" him. Two or more can play the game. They can let one throw all the time, or take it about in turn, after each bet is won or lost, or any way they please. Any two can make any bet they please as to the result of the throw made. Defendant would take all bets offered him. Others would bet with each other.

The table was not an essential or necessary part of the game, but only a convenience to prevent misunderstandings from arising between the players. The dice in playing the game can be thrown on the floor, on a counter, or on the ground, or any place where a level surface upon which to lodge the dice can be found. It can be played by parties walking along the road, throwing the dice in a hat. No particular dice are necessary. Two cubes of any convenient size and kind of substance, having the numbers either in figures or dots, will serve to play with. Can whittle out two cubes here in the court room, number the sides with a pencil, either by dots or figures, and play the game by throwing them on the floor or table. Any substance, as coal, wood, bone, clay, ivory, etc., can be used to make the dice. Can start here, with a small piece of wood and a knife, and in a few minutes be prepared to play the game before the court. The game referred to on the 1st of August, 1892, was played with dice which defendant had in the table. Defendant never forbade any one to bet, and took all bets that were offered him.

By the man on the outside is meant the man who came up to said table where defendant was sitting, and threw the dice and bet. The defendant never threw the dice, but always, or nearly always, did the "fading," that is, accept the bets offered. By the defendant's "blind" or block is meant the block he would put on seven at first throw and the thrower's "point" after, until one of them won or lost, and was by defendant kept on the number he was betting against, and is used in the game to represent his "fading" of the thrower's bet, and to keep the points correct.

Several parties approached that table on said day and bet with defendant as described.

At the Dallas Term the cause came on for hearing on appeal, and the judgment was reversed and cause remanded. A motion was made by the Assistant Attorney-General in behalf of the State for a rehearing, which motion was transferred to the Austin branch, where the case was finally disposed of as shown in the opinion of SIMKINS, Judge, below.

*Browning & Madden,* for appellant.—1. To keep or exhibit, for the purpose of gaming, a gaming table or bank, is an essentially distinct and separate offense from wagering at a game of dice; and a conviction for such keeping and exhibiting can not be had and sustained under and by facts showing only a wagering at such game. Penal Code, arts. 358, 364; Whitney v. The State, 10 Texas Cr. App., 379; Cronin v. The State, 30 Texas Cr. App., 278; Hale v. The State, 8 Texas, 171; White v. The State, 13 Texas, 133.

2. The playing at the game of dice known as "craps," on a table, and in which it is not shown that such game has in it, as an essential element of the game, the principle of a keeper, dealer, or exhibitor as one in interest against the many—that is, against any and all the bettors who may come and bet against the game, either singly or in groups—is neither a keeping nor an exhibiting of either a gaming table or a bank, as denounced by articles 358–360 of our Penal Code. Chappell v. The State, 27 Texas Cr. App., 310; Webb v. The State, 17 Texas Cr. App., 205; Stearnes v. The State, 21 Texas, 692; Commonwealth v. Kammerer, 13 S. W. Rep., 108.

3. The playing and betting at a game with dice, called "craps," on a table having on it a cloth, on which are certain numbers, and strips around the edges, it not being shown that such table, strips, numbers, etc., were in any way or manner either necessary or an essential part of the gaming device or the proper playing of such game, but that they are neither necessary nor essential, constitutes neither a keeping nor an exhibiting of either a gaming table or a bank, as denounced by articles 358–360 of our Penal Code. Whitney v. The State, 10 Texas Cr. App., 377; Chappell v. The State, 27 Texas Cr. App., 310; Commonwealth v. Kammerer, 13 S. W. Rep., 108.

### STATE'S MOTION FOR REHEARING.

*R. L. Henry,* Assistant Attorney-General, for the State.— And now comes the State of Texas, in the above numbered and entitled cause, by her Assistant Attorney-General, and moves the court to set aside the judgment of reversal rendered on the 18th day of February, 1893, for the following reasons:

1. Because the court erred in holding, that the record showed a game similar to the game passed upon in the case of Chappell v. The State, 27 Texas Criminal Appeals, 310. The facts in the Chappell case are entirely different from the facts shown in this case.

2. The record in this cause shows beyond controversy that the game played had all the essential elements of a gaming table and game, to-wit: first, it is a game according to the general definition; second, it has a keeper, dealer, and exhibitor; third, it is based on the principle of the one against the many, that is, the exhibitor against the many; fourth, it was displayed for the purpose of obtaining bettors; and fifth, bettors were secured, and upon this the conviction was obtained.

It is beyond dispute that appellant kept and exhibited the table for the purpose of gaming, and he invited bettors and secured bets. The record clearly discloses, that the dealer stood in the attitude of the one against the many. It is submitted that the case of Stearnes v. The State, 21 Texas, 698, is directly in point.

3. The record clearly discloses, that the game in controversy comes directly within the statute against "keeping and exhibiting a gaming table for the purpose of gaming." The record shows, that every word, letter, and article of the statute has been violated, and that one man kept and exhibited the table and invited and secured bets, and that this one man was the dealer and exhibitor all the time.

It is earnestly contended, that the case in hand is entirely different from the Chappell case, and an inspection of that case and this record will clearly disclose the difference. Penal Code, arts. 358–363; Willson's Crim. Stats., secs. 586, 587; Estes v. The State, 10 Texas, 306.

Wherefore, the State asks that the judgment of reversal be set aside, that a rehearing herein be granted, and that the judgment of the lower court be affirmed.

### ON MOTION BY THE STATE FOR REHEARING.

SIMKINS, JUDGE.—Appellant was convicted of unlawfully keeping and exhibiting a gaming table and bank, and his punishment assessed at a fine of $25 and ten days imprisonment in jail, from which he appeals.

Testing the facts of this case by the leading elements of a gaming table and bank, as laid down in Stearnes' case, 21 Texas, 698, we think the game of craps, as exhibited by appellant, was a gaming table, as defined by articles 358, 359, et seq., Penal Code. It was a betting game. The table was specially prepared for the game, being of a certain form, and having the numbers printed thereon, from 4 to 10 consecutively. The table and game were exhibited to attract bettors. It had an exhibitor, who presided at and kept his money on the table. Every one who bet threw the dice, except the exhibitor. All bet against him, and he took

every bet offered. In the crap vernacular, "he faded the bets." He paid all the winnings of the bettors, and took all their losses. It was the one against the many, the supreme test of a gaming table or bank. The fact that a game may be played without a table does not prevent a table specially designed for the game, and exhibited, from becoming a gaming table, though there are gaming table games which can not be played without a table. Nor is there anything in the suggestion, that in this game the dealer can take but one bet at a time, and the bettor throws the dice. It makes no difference whether he takes the bettors consecutively or in a body, if he is there for the purpose of taking every bet offered at his table.

In the Stearnes case it was a raffle, in which each separately and in turn threw dice for a prize. The court says the jewelry was the lure. The real fund against which the bettor staked his money was the fund in the dealer's pocket or on the table, and the defendant was convicted of exhibiting a gaming table. Nor is there anything in the suggestion that bettors might bet against each other. The true object was to induce parties to bet against the dealer, and such was the understanding and practice of the bettors.

In Chappell's case, 27 Texas Criminal Appeals, 312, it was held, that a game of craps, as exhibited in that case, was not a gaming table, but the decision was limited to the facts of that case, and the facts as there proven may have justified the decision; but in the case at bar there is not a single element wanting to show that this is a gaming table, and the judgment of the County Court of Donley County is affirmed.

*Affirmed.*

HURT, P. J., concurs.   DAVIDSON, J., absent.