## Charley Bird v. The State.

### No. 1759. Decided May 8, 1912.

### Rehearing overruled June 5, 1912.

**1.—Keeping Gambling Table—Continuance.**

Where the count in the indictment upon which the continuance was sought was not submitted, and the whereabouts of the witness was unknown, and under the evidence the absent witness could hardly have testified as alleged, there was no error in overruling the motion.

**2.—Same—Evidence—Moral Turpitude—Disorderly House.**

A disorderly house as defined by article 496, Penal Code, would render one adjudged guilty of such an offense, guilty of an offense involving moral turpitude.

**3.—Same—Billiard Table—Gaming Table.**

Under article 553, Revised Penal Code, a billiard or pool table if used for gaming is contemplated by said statute following. Stearnes v. State, 21 Texas, 692, and other cases.

**4.—Same—Rule Stated—Table.**

It is not literally the table on which the game is played that gives character and designation of a gaming table, but it is rather from the character of the game which is played that it receives its specific designation.

**5.—Same—Charge of Court—Definition of Gaming Table.**

Where the court charged, that the characteristics of a gaming table, such as the law forbids the keeping and exhibiting of for the purposes of gaming, were first, that it must be a game; second, that it must have a keeper or exhibitor; third, that it must be based upon the principle of the one against the many; that the keeper or exhibitor must be against all the bettors directly or indirectly; fourth, that it must be kept or exhibited for the purpose of obtaining bettors, and fifth, that the test as a gaming table is, was the game played a game of the one against the many, the definition was correct.

**6.—Same—Charge of Court—Gaming Table—Playing Craps.**

There are two ways of betting at the game of craps: the common or ordinary game, where the players bet with each other, and the other, where a man keeps and exhibits the game and all players bet with him, and where there was a conflict of testimony, upon trial of keeping and exhibiting a gaming table, as to whether defendant merely engaged in a game of craps with others, or whether he was keeping and exhibiting a crap game where he took all the bets, and the court in his charge clearly drew the distinction, there was no error.

**7.—Same—Sufficiency of the Evidence.**

Where, upon trial of unlawfully keeping and exhibiting for the purpose of gaming a gaming table, the great weight of the evidence showed that defendant did not himself throw or shoot in his turn at the game of craps, but those betting at the game did all the shooting and throwing, and he took all the bets, this would make defendant the keeper and exhibitor of a gaming table, and the conviction was sustained. Following Stearnes v. State, supra. Davidson, Presiding Judge, dissenting.

**8.—Same—Evidence—Date of Offense.**

Where, upon trial of unlawfully keeping and exhibiting for the purpose of gaming a gaming table, the State's witness was not positive whether the transaction occurred prior or subsequent to the date the indictment was returned, but the State showed that it occured during the time local option was in force, and that this was prior to the date of the return of the indictment, there was no error.

**9.—Same—Description of Room—Evidence.**

Where, upon trial of keeping and exhibiting for the purpose of gaming a gaming table, the State's witness described the room where the gambling took place as one adjoining a pool room, and that at one end was a counter or bar where intoxicants were dispensed, and in a corner was the billard or pool table upon which the game was played, and the whole scene was so interwoven and intermingled that a description of one could not have been given without the other, there was no error.

**10.—Same—Charge of Court.**

Where the court's charge, and the charge given at the request of defendant fully covered every phase of the case, there was no error in refusing other requested charges.

**11.—Same—Precedent—Former Decisions.**

Where defendant was charged with keeping and exhibiting for the purpose of gaming a gaming table, and the evidence showed that defendant stood behind the table and took all the bets, etc., the conviction was sustained, and he was not guilty of playing at the game but was correctly prosecuted under Article 553, Revised Penal Code. Distinguishing Vinsen v. State, 58 Texas Crim. Rep., 47; Askey v. State, 20 Texas Crim. App., 443. Qualifying Chappell v. State, 27 Texas Crim. App., 312. Approving Bell v. State, 32 Texas Crim. Rep., 191. Overruling Whitney v. State, 10 Texas Crim. App., 377. Davidson, Presiding Judge, dissenting.

**12.—Same—Judicial Construction—Cases Reviewed.**

See Opinion for cases reviewed, distinguished, qualified, overruled and approved.

**13.—Same—Distinction Between Banking Game and Gaming Table.**

The distinction drawn between a banking game and exhibiting a gaming table is, that where the player bets or pikes at the exhibitor's game and does not participate in the dealing or playing, it is a banking game; if the player in addition to betting or piking at the game also deals or participates in playing the game it is a gaming table. Following Stearnes v. State, 21 Texas, 698. Davidson, Presiding Judge, dissenting.

**14.—Same—Case Stated—Sufficiency of the Evidence.**

Where, upon trial of unlawfully keeping and exhibiting for the purpose of gaming a gaming table, the evidence showed that the players at a game called craps threw the dice, and the defendant, the exhibitor did not throw dice, but only exhibited the table and took the bets it was a gaming table, and the conviction is sustained. Davidson, Presiding Judge, dissenting.

Appeal from the District Court of Potter. Tried below before the Hon. J. W. Crudgington, Special Judge.

Appeal from a conviction of unlawfully keeping and exhibiting for the purpose of gaming a gaming table; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Cooper, Merrill & Lumpkin,* for appellant.—On question of the insufficiency of the evidence: Chappell v. State, 27 Texas Crim. App., 311; Webb v. State, 17 id., 205; Whitney v. State, 10 id., 377; Commonwealth v. Kammerer, 13 S. W. Rep., 108; Vinson v. State, 58 Texas Crim. Rep., 47; Askey v. State, 20 Texas Crim. App., 443; Johnson v. State, 56 Texas Crim. Rep., 511; Mosbey v. State, 54 id., 433; Snodgrass v. State, 61 id., 654; Stanley v. State, 48 id., 565.

On question of date of offense: Windham v. State, 59 Texas Crim. Rep., 368; Crass v. State, 30 Texas Crim. App., 480.

On question of Moral Turpitude: Hightower v. State, 131 S. W. Rep., 324; Powell v. State, id., 591; Merriwether v. State, 55 Texas Crim. Rep., 440.

On question of the court's charge: Spriggs v. State, 58 Texas Crim. Rep., 191; Hanks v. State, 54 Texas Crim. Rep., 1.

*C. E. Lane,* Assistant Attorney-General, for the State.—Cases cited in opinion.

HARPER, Judge.—1. Appellant was indicted in the District Court of Potter County, charged in one count with unlawfully keeping and exhibiting for the purpose of gaming, a gaming table; in the other count the charge was that he kept and was interested in keeping a certain place, premises and room as a place in which to bet and gamble, and a place in which people then and there resorted to gamble. The court only submitted to the jury the first count in the indictment. Therefore, there was no error in overruling the motion for a continuance, as it was stated in the application that it was expected to be proven by the witnesses that one Will Dean had the premises leased, and the place was under his control. That may have been true and yet it would not have proven that defendant did not keep and exhibit a table for gaming on said premises. In addition to this, the whereabouts of the witness Dean was unknown, and under the evidence in this case he could hardly have been expected to testify to the facts it is stated it was expected to have been proven; at least, he could not have been required to so testify, for such testimony, under the evidence, would have made him guilty of a felony.

2. The contention of appellant that the court erred in permitting the State to ask a witness if he was not under indictment charged with keeping a disorderly house, can not be sustained. A disorderly house as defined by Article 496 of the Penal Code certainly would render one adjudged guilty of such offense, guilty of an offense involving moral turpitude. For a citation of authorities see Vol. 5, Words & Phrases, 4580.

3. Appellant also contends that as the gaming took place on a billiard or pool table, it is not such a table as is contemplated by the statute. Article 553 of the Code (old number 384) provides: "Any game played for money upon a billiard table, or table resembling a billiard table, other than the game of billiards licensed by law, is punishable under the provisions of this chapter." This question is so ably discussed by Judge Roberts in the case of Stearnes v. State, 21 Texas, 692, we do not deem it necessary to discuss it here, but merely refer to that opinion. In the case of Estes v. State, 10 Texas, 300, it was in proof that defendant bet at a game played upon a billiard table called "rondo." The court held: "We do not understand that it is literally the table or structure, whatever that may be, on which the game is played that gives character and designation of a gaming table, but it is rather from the character, or the game which is played that it receives its specific designation." It has always been held that the character of the table was immaterial; it was the character of game that brought it within the meaning of the statute. The court instructed the jury:

"The characteristics of a gaming table, such as the law forbids the keeping and exhibiting for the purpose of gaming, are: 1st. It must be a game; 2nd. It must have a keeper or exhibitor; 3rd. It must be based upon the principle of the one against the many; the keeper or

exhibitor must be against all the bettors directly or indirectly; 4th. It must be kept and exhibited for the purpose of obtaining bettors, and 5th. The test as a gaming table is, was the game played a game of the one against the many."

This definition is within all of our decisions. At the request of appellant the court gave the following charge:

"You are instructed, at the request of the defendant, that if you find and believe from the evidence that defendant, together with others, were simply shooting craps with each other, then and in that event you will return a verdict for the defendant of 'not guilty' and so say by your verdict."

This drew the distinction clearly as between the contention of appellant and the State. There was some conflict in the testimony as to whether appellant merely engaged in a game of craps with others, or whether he was keeping and exhibiting a crap game, where he took all bets, or as it is said "faded" all who desired to engage in the game. As shown by the testimony, there appears to be two ways of betting at this game, the common or ordinary game where the players bet with each other, and the other where a man keeps and exhibits the game, and all players bet with him. As explained by one witness: "If it is a regular game of craps one man is supposed to be banking the game, and it is a game of the one against the many. By that expression 'one against the many' I mean to say that one man runs the crap game, and banks the game and he takes all the bets that come, and if it is just shooting craps two people sitting down or standing at a table can play together or a dozen can and each man shoots at his turn and any other player can cover his bet. If one man is running a crap game why he banks the game and does not throw himself but takes the bets from the players and he is called the banker." According to the great weight of the testimony in this case, appellant did not himself "throw" nor shoot in his turn, but those betting at the game did all the shooting and throwing, and he took all the bets. Under the definitions of Judge Roberts, in the Stearnes' case, supra, this would make appellant the keeper and exhibitor of a gaming table. A. W. Sutton testified: "I saw defendant running a gambling table in there. He was running a game they call craps. That game is played with dice and I think this one was being run on a pool table. The pool table was located towards the front end of the building. By the front I mean up toward the west part of the room. I have noticed a crowd in there every time I went in drinking something. I suppose it was intoxicating liquors they were drinking. That was before the saloons opened up last fall. I do not remember that date that the saloons were reopened here. The defendant was generally stationed at one side of the table and the players on the opposite side of the table or at the end of it. The banker or man that was running the game was on one side of the table and he had money on the table and the players would put down their money, and they

would take up two dice handed them by the banker and roll them out on the table and the numbers were designated by spots on the dice, and they were from one to six and each dice had six sides, and there was a number designated by spots on each side of the dice from one to six, and by those numbers they could tell whether they won or lost. After the shots were made if the player lost the banker would rake in the money and whenever one would win he would throw out as much money as they had bet; he covered all bets. The dice were thrown by the players. The banker, the defendant here, did not shoot the dice at all. Each player that shot the dice got what money he won from the defendant and paid to the defendant what money he lost. The player played against the banker always. I don't know how many times during this period of time I have seen the defendant doing what I have described in that place, but I should approximate the number at four or five times."

All the evidence would indicate that the game played was a banking game of craps, which had a keeper and exhibitor, and not the game of craps in which all persons engaged therein participate with each other and bet with each other.

4. Pete Kinkead testified to being in the room adjoining the Oriental Pool Hall where the crap game was played, and testified to seeing the game on several occasions. He could not be definite as to date of the occasions on which he visited this place. The indictment in this case was returned September 30, 1910, and on cross-examination he would not be positive whether it was prior to or subsequent to this date that he saw the gambling going on in this room. Appellant then moved to exclude his testimony on the ground that the witness had not fixed the time he, witness, saw the playing as prior to the return of the indictment. The State, on redirect examination, fixed the time by the witness as being during the time local option was in force in Potter County. Taking the testimony as a whole, the time when local option was in force and voted out was prior to the date of the return of the indictment. Consequently, there was no error in the court refusing to exclude this testimony.

5. The witnesses for the State, in describing the room where the gambling is alleged to have taken place, said it was a room adjoining the pool room; that at one end was a counter or bar where intoxicants were dispensed, and in a corner was this billiard or pool table where the game was played. Defendant objected to the witnesses being permitted to testify about the bar and intoxicating liquors being sold in this same room, because it was not sought to connect defendant with the sale, was irrelevant and prejudicial. As shown by the bill, there was no effort made to prove that appellant was selling intoxicating liquors in violation of law, and no effort made or evidence introduced to show that he was guilty of another offense than that charged in the indictment. The evidence admitted was essential to a description and location of the place, the room

being devoted to both purposes, and there was no error in admitting the evidence. One witness testified that one would have to go to the door, knock thereon, and a man from the inside would open the door and admit you, when the purposes to which the room was devoted was discernible all at one glance. The whole scene was so interwoven and intermingled, a description of one could not have been given without the other.

6. The court's charge, and the charge given at the request of appellant, fully covered each and every phase of the case, and there was no error in refusing the other special charges requested.

7. The cases of Vinson v. State, 58 Texas Crim. Rep., 47, and Askey v. State, 20 Texas Crim. App., 443, cited by appellant, do not sustain his contention, but are authorities in support of the State's case. In those cases the defendants were not indicted for keeping and exhibiting a gaming table, but for playing, and the court held as they were exhibitors of the gaming bank or table and took all bets, they were not guilty of playing at the game, but should have been prosecuted for exhibiting the game. In this case appellant was convicted of exhibiting a gaming table, and those cases hold he is prosecuted under the proper article of the statute. Appellant also cites us to the case of Chappell v. State, 27 Texas Crim. App., 312. That case holds that the *character of table* would be immaterial, and exactly contrary to appellant's contention in this case. In the closing part it does hold where the defendant was shown to have in no manner participated in the game, took nor made any bets, that he would not be guilty of exhibiting a gaming table. The facts of this case do not bring appellant's case within the facts as stated in that opinion. In this case the evidence would support a finding of the jury that appellant stood behind the table and took all bets. In the case of Bell v. State, 32 Texas Crim. Rep., 191, it is said:

"Testing the facts of this case by the leading elements of a gaming table and bank, as laid down in Stearnes' case, 21 Texas, 698, we think the game of craps, as exhibited by appellant, was a gaming table, as defined by articles 358, 359, et seq., Penal Code. It was a betting game. The table was specially prepared for the game, being of a certain form, and having the numbers printed thereon, from 4 to 10 consecutively. The table and game were exhibited to attract bettors. It had an exhibitor, who presided at and kept his money on the table. Every one who bet threw the dice, except the exhibitor. All bet against him, and he took every bet offered. In the crap vernacular, 'he faded the bets.' He paid all the winnings of the bettors, and took all their losses. It was the one against the many, the supreme test of a gaming table or bank. The fact that a game may be played without a table does not prevent a table specially designed for the game, and exhibited, from becoming a gaming table, though there are gaming tables games which can not be played without a table. Nor is there anything in the suggestion, that in this game the

dealer can take but one bet at a time, and the bettor throws the dice. It makes no difference whether he takes the bettors consecutively or in a body, if he is there for the purpose of taking every bet offered at his table.

"In the Stearnes case it was a raffle, in which each separately and in turn threw dice for a prize. The court says the jewelry was the lure. The real fund against which the bettor staked his money was the fund in the dealer's pocket or on the table, and the defendant was convicted of exhibiting a gaming table. Nor is there anything in the suggestion that bettors might bet against each other. The true object was to induce parties to bet against the dealer, and such was the understanding and practice of the bettors."

The facts of that case and this case are peculiarly the same, except in this case a different character of table was used, and all the decisions hold that the character of table that is exhibited is immaterial.

The judgment is affirmed.

*Affirmed.*

DAVIDSON, Presiding Judge, dissents.

DAVIDSON, Presiding Judge (dissenting).—I think this affirmance is wrong. The evidence in the case does not show a gaming table. If it proves anything, it proves a banking game under all of the authorities that have been called to my attention. See Webb v. State, 17 Texas Crim. App., 205; Chappell v. State, 27 Texas Crim. App., 310; Estes v. State, 10 Texas, 300.

Judge Willson, in the Webb case, used this language: "To constitute a bank, there must be a fund of money offered and ready to be staked on all bets others may choose to make against the banker, on the game which he keeps or exhibits. This element is the distinguishing feature between a bank and a gaming table, and is perhaps the only real difference between them. (Stearnes v. The State, 21 Texas, 692; Bish. on Stat. Cr., Sec. 866.)" The Webb case is directly in point in the instant case.

In the early case of Estes v. State, supra, the defendant played at a game called "rondo," played upon a billiard tabel. The court said in that case as follows: "We do not understand that it is literally the table or structure, whatever that may be, on which the game is played that gives the character and designation of a gaming table; but it is rather from the character of the playing, or the game which is played, that it receives its specific designation."

Judge White, in delivering the opinion in the case of Chappell v. State, supra, said: "In the case of Stearnes v. State, 21 Texas, 693, it was held that 'Grand Raffle,' as described in that case, was a gaming table exhibited for gaming. It was further said in that case that 'it is difficult to imagine any species of table or bank, or gaming device resembling either, that is kept for gaming, that would not be included. Parties are liable to be misled by the words 'table and bank,' by

attributing a meaning too restricted and literal. . . . There is no question in our minds but that the Stearnes case showed a case of exhibiting *a gaming table and bank.* In Webb's case, 17 Texas Court of Appeals, 205, defendant was convicted upon a charge of unlawfully keeping and exhibiting 'a bank for gaming purposes,' the evidence showing that the game was fifteen ball pool, played upon a billiard or pool table, and in which game the loser was to pay for the drinks or cigars ordered from defendant's bar by those engaged in the game. It was held that the game proven was not *a bank* but a gaming table, and it was said 'the statute uses the words gaming table or bank, evidently meaning two different things.'" The difference, as Judge Willson said in Webb's case, 17 Court Crim. Apps., 205, is that in a banking game it has a dealer of one against the many, who takes or receives all bets and pays all losses. This was not the condition shown in the Stearnes case, 21 Texas, 693, which was held to be a gaming table. The banking game of craps when it is played with a dealer or one against the many, is a banking game. This seems to be well settled, as I understand, under all the authorities. I do not propose to enter into a discussion of the question as the distinction has been kept up in all the authorities from Estes v. State, supra, to the present time. My brethren, I think, are clearly in error in holding that a banking game of craps is a gaming table simply because the dice were thrown on a billiard table used for that purpose. I can not, therefore, concur with them and enter this my dissent. I do not care to discuss the case further.

ON REHEARING.

June 5, 1912.

HARPER, JUDGE.—This case was affirmed at a former day of this term, and appellant has filed a motion for rehearing. In it he says: "Appellant does not contend that the evidence did not show that a banking game was played, and does not contend now that the evidence does not show that a banking game was played, but has contended at all times, and still contends that he was not indicted for running a banking game, and that he has not had an hour or day in court upon a charge for conducting a banking game." This simplifies matters, for if by a proper construction it was a "gaming table," within the meaning of our laws, he was exhibiting, the guilt of appellant is admitted, he only contended that instead of exhibiting a gaming table, that he was engaged in running a "bank." Appellant further says: "The court, in the majority opinion affirming this cause, undertakes to do so upon the authority of the Stearnes case, reported in the 21 Texas, 693. We do not understand that such is the usual practice in going back in ancient history in order to find a case that would permit this court to affirm a judgment." Judge Roberts, the writer of the opinion in the Stearnes case, is recognized as one of

the ablest lawyers who ever graced the bench of this State, and we do not understand that a construction placed by him on our statutory law is "ancient history;" but the rules of law then prevailing are the rules of law of today, and will be for tomorrow, and this case has been frequently referred to by this court as a leading case on gaming tables and banks. We can not agree to change the rule of construction every time a friend desires a case reversed or affirmed, but the law should be the same as applied to all men.

As to whether one who stands behind a billiard table and runs a game of craps, to be participated in by all who desire, is running a gaming table, in the Stearnes case (21 Texas, 693) Judge Roberts says the indictment charged that defendant "did keep and exhibit a gaming table for the purpose of gaming," and that the evidence was clear, positive and without conflict, and described a gaming table as plainly as any description can be given of roulette. The evidence in that case did not show any specially prepared table, but that on a table one threw dice for prizes ranging in value. This appellant terms as "ancient history," for if the rule there announced is the law, then there can be no question under the evidence in this case that appellant was guilty of exhibiting a gaming table as charged. It is true, that in the case of Whitney v. State, 10 Texas Crim. App., 377, a somewhat different construction was given to the statute. In that case it was held: "Obviously the intention was to prohibit gaming upon tables or banks made or constructed with a view to certain specific games in which the table or bank is not only a part of the gaming device, but is also necessary to the proper playing of the game." This decision was in direct conflict with the prior holding of the court in Estes v. State, 10 Texas, 300, wherein it was said by Judge Wheeler: "We do not understand that it is, literally, the table or structure, whatever that may be, on which the game is played which gives it the character and designation of a gaming table, but it is rather from the character of the playing or the game which is played that it receives its specific designation. If it be a billiard table which is used, as from the evidence it appears it generally is, the name and description of the game played is material only that it may appear that it is not the game which is protected by the license, or that it is of the description or species of gaming prohibited by the statute. When thus employed and for such purposes the billiard table is perverted from its legitimate design and use."

The opinion in the Whitney case was also in direct conflict with the Stearnes case wherein it was held:

"Article 412 prohibited the keeping or exhibiting a gaming table or bank, of every sort, of every name, and of no name. The regular game of this class, known throughout the world, whether yet introduced here or not, are certainly comprehended in this enactment. But the Legislature designed something more by it. They anticipated that disguises, shifts and subterfuges would be resorted

to, by which the regular games of this class would be changed, or new ones invented; and yet they would be none the less known and understood by persons understanding the subject at all, and often by the community at large, to be games of this class. Crow v. The State, 6 Texas, 334. Intending to include all such gaming devices (as they have said in Code, article 413) they furnish, to those who are to administer the law, a test (not the only test) by which the games of this ·class, whether regular or irregular, or mere inventions, are to be distinguished; and that is, when they are said to be dealt, kept, or exhibited; not 'said,' ·by one class or one section; but said in common language. Nor does the judge on the bench have to derive his knowledge, that it is so said, by the proof of witnesses, and the verdict of a jury, in every county in which he goes. This test indicates and presupposes a quality or fact in the game, by which the class to which it belongs may be known. And although gamblers might change the name of the quality or fact, and call it something else, still the judge, knowing what it was 'commonly called,' should nevertheless pronounce it an offense. It may be well ·to illustrate this. In the regular games of this class there is always a dealer, keeper, or exhibitor, who has an interest in the game directly, or indirectly. And it is for this reason he is the keeper. If a party should establish in his house a table, for gaming purposes, and carry it on himself without betting upon it himself, but to enable others to bet (as in pool) and should, instead of charging a percentage upon the bets, depend upon the custom of the betters at his bar, to compensate him, the evil would be no less, because he perhaps made less. He might even not be present all the time during the playing, in some such case that might be devised. Here, although, acording to the rules of such games, he could not strictly be said to be the keeper, or exhibitor, still the community would not be misled by such a change in the mere mode of deriving his gains; and it would be said ·'in common language,' that he kept or exhibited the table. And the same would be said doubtless, in the case of one who might keep such a table without any expectation of profit. Which, however, is hardly a supposable case.

"Thus it has been seen, that it is evidently the intention of the Legislature to extend this prohibition over every possible game, falling under this class of gaming tables and banks, however, regular or irregular they may present themselves, or what may be their disguises."

In the two decisions just quoted it · was held to be immaterial what character of table was used, while the Whitney case announced a different construction. However, the construction given to the statute in the Whitney case did not last long, for in the case of Chappell v. State, 27 Texas Crim. App., 313, the rule announced in the Estes and Stearnes cases was again adopted by this court, and it was held: "It seems that the status of the table—that is, whether

it was made specifically for gaming purposes—can not ordinarily affect this question; it is rather the character of the playing or game which is played that it receives its specific designation, and the cases of Estes v. State and Stearnes v. State, are quoted approvingly, and this later opinion was rendered by the same learned judge who rendered the opinion in the Whitney case, and thus it is seen that Judge White himself in the Chappell case virtually overruled his opinion in the Whitney case, and we can not be expected "to go back into ancient history" and adopt an opinion that the judge who rendered it, himself overruled it, and which has not been followed by this court since that time. We prefer to follow the law as laid down by Judge Roberts and Wheeler and finally adopted by Judge White, as the reasoning in those cases appeal to our judgment, and we think correctly interpreted the intent of the Legislature in enacting the statute. However, in the Chappel case it is said: "Is the game of 'craps' as described above, one which in common language is said to be played, dealt, kept or exhibited by a dealer or keeper? We think clearly not. There is no dealer or exhibitor in it. The game is played by the parties throwing dice, the participants in the game, without the intervention of any third or outside party. All the defendants did was to collect five cents for every two throws by the players, *evidently, we think, as pay for the use of his dice and not for table fees.*" This was an exceedingly discriminatory opinion, holding that the charge was made for the use of the dice solely, and no part of same was for the use of the table which appellant kept, in that case, to be gambled on. However, as fine as this distinction is, it might be claimed we should follow it, if it was not against the great weight of authority, both in this and in other states. In the Stearnes case, supra, hereinbefore copied, it was said: "If a party should establish in his house a table for gaming purposes, and carry it on himself without betting upon it himself, but to enable others to bet, and should instead of charging a percentage upon the bets, depend upon the custom of the betters at his bar, to compensate him, the evil would be no less, because he perhaps made less. He might not even be present all the time during the playing, in some such cases that might be devised. Here, although according to the rules of such games, he could not strictly be said to be the keeper, or exhibitor, still the community would not be misled by such a change in the mere mode of deriving his gains; and it would be said 'in common language,' that he kept or exhibited the table. And the same would be said doubtless, in the case of one who might keep such table without any expectation of profit." Judge Roberts was an able and profound lawyer, and recognized and appreciated that the intention of the Legislature was to suppress gaming tables, and he gave to the statute the construction that would effectuate that purpose and intent. Not only was the Chappell case on that point directly in conflict with the earlier opinions of Judges Roberts and Wheeler, but it is also in conflict with a

later opinion of this court in the case of Bell v. State, 32 Texas Crim. Rep., 192, where it was held:

"'Craps.' Where, on a trial for exhibiting a gaming table, the evidence showed that the game played was 'craps,' that it was played upon a table of a certain form and with printed numbers on it to be used in the game, which table was exhibited to attract bettors; that it had an exhibitor who presided at and kept his money upon it; that all the parties to the game threw the dice, except the exhibitor; that all bet against him; that he paid the winnings of the bettors, and took all the losses. Held, that such table was a gaming table, within the purview of articles 358 and 359 of the Penal Code."

Thus it is seen that both by the earlier and later decisions of this court it is held the facts in this case would render appellant guilty of exhibiting a gaming table, and in a still later case, Bell v. State, 21 S. W. Rep., 366, Judge Davidson held: "The game played is proved to have been 'craps.' This is not a banking game under the statutes of this State." And yet in the face of this decision appellant insists on our holding that 'craps' is a banking game under the statutes, and if we did so, and he was prosecuted for that offense, he would come before us and insist that we were bound by this decision, and, of course, must not permit a conviction to stand, and thus by quoting one line of decisions, find that it was not a "gaming table" and by another line that it was not a "banking game," and thus go "Scott free," although he does not deny that he was running a gambling establishment. Again, in the case of Mohan v. State, 60 S. W. Rep., 553, this court held: "Here the evidence shows that the parties were playing and betting at craps with dice. Jordan Wagoner exhibited the game and took all bets. He owned the table. Now, if Jordan Wagoner exhibited the game and took all bets, and the parties were playing craps with dice and betting therein against the owner, the one against the many, was this not a table or banking game? Evidently it was. . . . We think the proof sufficiently shows it was *a gaming table,*" citing Stearnes v. State, 21 Texas, 693, and other cases, thus showing that we are not the only one who has delved into "ancient history," as appellant terms the opinion by Judge Roberts. And in the case of Harman v. State, 22 S. W. Rep., 1038, in an opinion by Judge Davidson, this court held:

"Appellant was convicted of keeping and exhibiting a gaming table. He exhibited a 'crap table,' at which fifteen or twenty persons were playing or betting. The table was a half circle in form, behind which he stood, and took all the bets from the players, who were standing on the outer side of the table. The table had numbers marked on the surface. Under the rules of the game the players were not permitted to bet against each other, but only against the keeper of the table. He stood on one side of the table, with his money and chips before him, and everybody played at the game on the opposite side, and bet against him. He took the money lost by the players, and

paid all bets won by them. This was clearly a gaming table. Stearnes v. State, 21 Texas, 698; Bell v. State (Texas Crim. App.; Austin term, 1893), 22 S. W. Rep., 687. The judgment is affirmed. Judges all present and concurring."

The court was then composed of Judges Davidson, Hurt and Simkins, and this opinion has never been modified nor overruled, and the facts as recited in that case and the facts in this case are identical. The only other case cited by appellant as bearing on this case is Webb v. State, 17 Texas Crim. App., 206, in which it was held that where a person who kept a table upon which was played the game known as fifteen ball pool, he could not be convicted of exhibiting a banking game, although he might be convicted of exhibiting a gaming table. In Chappell's case it was held that where there is no keeper or exhibitor, a man can not be convicted of running a gaming table, and thus if we follow these two decisions, there would be no such offense as exhibiting a table under the construction given. Because if it had a dealer, keeper or exhibitor it is a bank; if it had no keeper, dealer or exhibitor, it is not a gaming table. In these respects these decisions have not been followed, and we prefer to follow the rule as laid down by Judge Roberts in the Stearnes case, followed by Judge Simkins in the Bell case, reannounced by Judge Henderson in the Mohan case, and declared by Judge Davidson in the Harman case, and if the Harman case is the law, there can be no question that the facts in this case render appellant guilty of exhibiting a gaming table. Not only do our courts so hold, but by reference to vol. 14, Am. & Eng. Ency. of Law, page 707, it will be found that the great weight of authority so holds. Many cases are there cited, that we do not deem necessary to copy but merely refer to. The distinction drawn between a banking game and exhibiting a gaming table is that where the player bets or pikes at the exhibitor's game, and does not participate in the dealing or playing, it is a banking game; if the player in addition to betting or piking at the game, also deals or participates in playing the game, it is a gaming table. This distinction was clearly drawn in the leading case of Stearnes v. State, supra, by Judge Roberts and has been followed by this court when called to its attention. In this case, it being undisputed that the players threw the dice and appellant, the exhibitor, did not throw dice, but only exhibited the table and took the bets, it was a gaming table.

The motion for rehearing is overruled.

*Overruled.*

DAVIDSON, PRESIDING JUDGE (dissenting).—The judgment herein was affirmed during the present term, at which time I entered my dissent. An opinion has since been written overruling a motion for rehearing. On account of certain statements in the opinion on rehearing I have thought it advisable to make a few further observations.

My brethren hold that under the testimony appellant is guilty of

exhibiting a gaming table. Under my view of the statute and wording of the Act of the Legislature, my brethren are clearly wrong. Appellant, if guilty of anything, was guilty of exhibiting a banking game. The evidence seems to be uncontradicted that the dice were thrown on a billiard table, and the State sought to hold appellant guilty under the theory that he was the banker and received the bets and was one against the many, under the decision in the case of Stearns v. State, 21 Texas, 692. Article 558, Revised Criminal Statutes, provides that "if any person shall, directly or as agent or employe for another or through any agent or agents, keep or exhibit, for the purpose of gaming, any policy game, any gaming table, bank, wheel or device of any name or description whatever, or any table, bank, wheel or device for the purpose of gaming, which has no name, or any slot machine, any pigeon hole table, any jenny lind table, ten pin alley or table or alley of any kind whatsoever," etc. It will be observed from reading this statute that the Legislature by specific and positive language made the exhibition of a gaming table and a gaming bank different offenses, and constituted by different acts to be proved by attendant facts and circumstances. It is all sufficiently plain without resorting to any rules of *"technical"* construction or *"technical"* rules of construction that the Legislature made and constituted "gaming table" one thing and a "banking game" another thing. That the Legislature had a right to do this is not to be questioned. The distinction between gaming table and banking game, wherever that question has come before the court for decision, has been kept in view. Some of the decisions might appear at first blush to be a little confusing, but when the issue decided in the cases is kept in view, there is no confusion. Some of the cases in regard to a game of craps have not been specific in this matter, but in such cases I think it will be clearly discoverable that the decision was drawing the distinction between the old fashion "head to head" game of craps and a game played where there was a dealer or exhibitor, or at least "one against the many." I do not believe any of those decisions, when properly viewed, are in conflict with each other. It is asserted in the opinion on rehearing that Whitney's case in 10 Texas Crim. App., 377, was overruled by Chappel v. State, in 27 Texas Crim. App., 310. I do not understand the reasoning of my brethren by which this conclusion was reached. The two cases by any fair construction or intendment are not in conflict but in strict harmony and unison and were intended so to be. It was necessary that the Whitney case be drifted from in order that the judgment in this case should be affirmed. I cite in support of the correctness of the views here expressed Whitney v. State, supra; Chappel v. State, supra; Webb v. State, 17 Texas Crim. App., 206; Shaw v. State, 35 Texas Crim. Rep., 394; Estes v. State, 10 Texas, 300. I might also cite as sustaining my views Harman v. State, 22 S. W. Rep., 1038, and Bell v. State, 32

Texas Crim. Rep., 187, and a great number of others. Judge Harper in his opinion cites the Harman case, supra, as sustaining his views. I wrote the opinion in the Harman case and Judge Simkins wrote the opinion in the Bell case. An inspection of the Shaw case and the Whitney case and the Chappel case and the Webb case, and the facts under which they were decided, will show that a comparison between those cases and the Harman and Bell cases show absolutely no conflict. In each of those cases, under the facts, the game exhibited was held to be a gaming table. The facts are revealed by each one of those cases in which that ruling was made. Take the Harman case for instance: It was there said: "Appellant was convicted of keeping and exhibiting a gaming table. He exhibited a 'crap table,' at which fifteen or twenty persons were playing or betting. The table was a half circle in form, behind which he stood, and took all the bets from the players, who were standing on the outer side of the table. The table had numbers marked on the surface. Under the rules of the game the players were not permitted to bet against each other, but only against the keeper of the table. He stood on one side of the table, with his money and chips before him, and everybody played at the game on the opposite side, and bet against him. He took the money lost by the players, and paid all bets won by them. This was clearly a gaming table." Under the facts stated in the opinion it will be discovered that there was a table made expressly for the purpose of exhibiting the crap game and the table was so exhibited. It was made and exhibited for that purpose. It formed a part of the game in that it was kept at that place and exhibited generally for the purpose of people gambling with craps. The Bell case was similar. These two cases evidently held this to be an exhibition of a gaming table by reason of the fact that the table was constructed for that purpose and exhibited for the purpose of inviting all parties who desired to bet on the game or play at the game to do so. This, I think, brings it sufficiently within the definition of a gaming table and what has been understood to be a gaming table to justify the correctness of the Harman opinion. But the facts in this case are in no way similar to those in the Harman and Bell cases. In this particular case the parties went into a room where there was an old billiard table and for convenience sake played the game upon the billiard table. This table was not exhibited for that purpose; it was just accidentally selected for the occasion. If simply the playing of the game of craps with "one against the many" constitutes a gaming table, then wherever the game is played, the one who deals or manages the game against the many, the receiver of all the bets, would be exhibiting a gaming table anywhere and under any circumstances. A bunch of negroes meeting in the open woods, carrying on their game at night by the light of a tallow candle, surrounding the man who was doing the banking, would, under the majority opinion, constitute a gaming table, and not a banking game. The surface of the earth, wherever

such game occurred, would, under the rule of the majority in this case, constitute a gaming table. The writer of the Harman case also wrote the opinion in the Shaw case. Under the facts of one it was held the party exhibited a *gaming table;* in the other it was held the game was a *banking game.* These matters are determined by the application of the law to a given state of facts. I do not propose to pursue this matter further than to say that the construction placed upon the statute by my brethren obliterates the distinction between a banking game and a gaming table in the face of the declared purpose and intent of the Legislature to make them different games. *"Technicalities"* have been resorted to to destroy the legislative intent and purpose as declared by positive legislation, and this in the face of the statute, Penal Code, article 9, which provides that "this Code and every other law upon the subject of crime which may be enacted shall be construed according to the plain import of the language in which it is written, without regard to the distinction usually made between the construction of penal laws and laws upon other subjects, and no person shall be punished for an offense which is not made penal by the plain import of the words of the law." The plain import of the language of the statute, article 558, is that any person who shall exhibit a gaming table or any person who shall exhibit a banking game shall be guilty. The two games are different—made so by legislative enactment. This is the plain import of the words used by the Legislature. *"Technicalities"* have been resorted to to destroy the plain import of the language employed by the Legislature in the face and positive command of legislative required construction.

Another plain proposition has been violated and it is this, that all rules of construction and interpretation should uphold the purpose and intent of legislative acts and not destroy it.

Without pursuing the matter further I state the above as some of the reasons why I can not agree with my brethren in their holding. A party should be convicted under the law as it is written and not under a law substituted by *"technicalities."*

I therefore enter this as my dissent.